A93A1803. AUTO-OWNERS INSURANCE COMPANY
v. JACKSON.
(440 SE2d 242)

POPE, Chief Judge.

We granted this interlocutory appeal to determine whether a provision in an automobile liability insurance policy which excludes coverage if the insured "intentionally causes bodily injury or property damage" is void as against public policy even if other insurance coverage is available to the injured third party through an uninsured motorist policy.

Terry Dixon intentionally rammed his vehicle into a vehicle owned by Margaret Mincey and driven by Brenda Davis Dixon, Dixon's estranged wife. Lois Davis, a passenger in Mincey's car, was seriously injured. Dixon had a liability insurance policy with defendant/appellant and notified it of the incident. Within two months, defendant informed Dixon that it would not provide coverage or a defense to any action against him, citing a provision in the policy excluding coverage to an insured who "intentionally causes bodily injury or property damage." Almost a year later, Davis filed suit against Dixon, seeking compensatory and punitive damages. Although the record shows that Mincey's car was insured pursuant to a policy which included uninsured motorist coverage, it does not appear that Davis ever served Mincey's carrier with a copy of her action against Dixon or that she ever sought to recover anything under Mincey's policy. Dixon failed to respond to Davis' complaint, and a default judgment in the amount of $150,000 (including $75,000 in punitive damages) was entered against him. Dixon then filed for bankruptcy protection under Chapter Seven. Plaintiff, the trustee of Dixon's bankruptcy estate, brought this action against defendant insurer, contending that the policy exclusion is void as against public policy and praying for recovery of $150,000 to cover Davis' judgment as well as penalties and attorney fees based on defendant's bad faith denial of coverage. See OCGA § 33-4-6. Defendant moved for summary judg-

ment or, in the alternative, partial summary judgment, arguing that the exclusion was not void as against public policy; that even if it was void as against policy, it was only void to the extent of $15,000, the level of insurance coverage mandated by the Georgia Motor Vehicle Reparations Act; and that in any case, penalties for bad faith under OCGA § 33-4-6 would be unwarranted. The trial court denied defendant's motion entirely, and we granted its application for interlocutory review.

1. Defendant first contends that the exclusion from coverage of damages intentionally caused by the insured is not void as against public policy and should be enforced as written.

By mandating that all motor vehicle owners have at least $15,000 in liability insurance coverage, the Legislature established the public policy that innocent persons who are injured in accidents involving motor vehicles should be able to recover at least $15,000 of their damages. See *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335 (1, 2) (329 SE2d 136) (1985); OCGA § 33-34-1 et seq. In *Martin v. Chicago Ins. Co.*, 184 Ga. App. 472 (361 SE2d 835) (1987), a case in which an insured intentionally drove his car into a group of pedestrians, we held that an exclusion identical to the one at issue here was unenforceable because it would contravene this public policy by leaving the injured pedestrians without recourse for recovery of any of their damages. *Martin* relied on *Neese*, 254 Ga. at 335-342, in which the Supreme Court held that application of an exclusion of coverage for damages caused while the insured was drag racing was void as against public policy to the extent of the amount of liability insurance required under the compulsory insurance law. While recognizing that the public's interests in keeping premium costs down and improving safety on the highways would be fostered by enforcing the exclusion, the Court in *Neese* concluded that these interests were outweighed by the public interest in ensuring some recovery for the innocent victims of the insured's misconduct. Id. at 341. The Court in *Neese* noted that the innocent third party in that case had no uninsured motorist coverage, however, and explicitly recognized that the balancing of interests might produce a different conclusion where an alternative source of insurance was available: "We leave to a proper case the question of whether the existence of uninsured motorist coverage would affect the outcome in such a case." Id. at 341, n. 13. Since *Neese* and *Martin* were decided, we have added to this body of law with *Travelers Ins. Co. v. Progressive Preferred Ins. Co.*, 193 Ga. App. 864 (389 SE2d 370) (1989). In *Travelers*, another case involving the enforceability of an exclusion in a motor vehicle liability insurance policy, we considered the competing interests discussed in *Neese* and held that the exclusion should be enforced as written where the injured third party had access to other insurance funds through unin-

sured motorist coverage under another policy. *Travelers* involved an unlicensed driver exclusion rather than the intentional causation of damage exclusion at issue here, but we think the relevant considerations and resulting conclusion should be the same: If the injured third party has or had access to a recovery through uninsured motorist coverage under another policy, the exclusion is enforceable.

The record contains the insurance policy covering Mincey's car at the time of the collision, and that policy provided uninsured motorist coverage of $15,000. Long before Davis' action against Dixon was filed, defendant had legally denied coverage, thus rendering Dixon's motor vehicle "uninsured" for purposes of uninsured motorist coverage. See OCGA § 33-7-11 (b) (1) (D) (iii). The record does not show that Davis took advantage of the policy covering Mincey's car, but it does show that the possibility of doing so was available to her. Accordingly, *Neese* and *Martin* are distinguishable and plaintiff cannot rely on them to invalidate the exclusion.

2. Plaintiff argues that the trial court's denial of summary judgment was proper anyway, because there is still a dispute regarding whether Dixon intentionally caused bodily injury or property damage. However, the judgment in Davis' action states the trial court's finding that Dixon "wilfully and intentionally drove his vehicle with great force into and against" Mincey's vehicle, and Dixon never challenged this judgment.[1] Plaintiff's reliance on *State Farm &c. Co. v. Carter*, 208 Ga. App. 873 (432 SE2d 614) (1993) and *Southern Guaranty Ins. Co. v. Saxon*, 190 Ga. App. 652 (379 SE2d 577) (1989) is misplaced. In these cases involving insurance policy exclusions similar to that at issue here, we held that an insured may have acted intentionally without intending to cause damage. In *Carter*, however, we recognized that in some cases the nature of the intentional act is such that intent to cause damage must be inferred as a matter of law, see 208 Ga. App. at 874; and this is just such a case. The exclusion is therefore applicable as well as enforceable, and the trial court erred in denying defendant's motion for summary judgment.

3. In light of our conclusion that defendant's motion for summary judgment should have been granted, we need not address defendant's arguments regarding its motion for partial summary judgment.

*Judgment reversed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED JANUARY 3, 1994.

*Dillard, Bower & East, Bryant H. Bower, Jr., Joseph E. East,* for appellant.

---

[1] We also note that plaintiff acknowledged that Dixon's actions were intentional in his brief in opposition to summary judgment below.

*Gibson & Jackson, Douglas Gibson,* for appellee.