### A94A1945. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. DRAWDY et al.
(456 SE2d 745)

POPE, Presiding Judge.

State Farm filed this declaratory judgment action seeking a determination that it is not liable for damages resulting from a January 1, 1990, collision between vehicles driven by Robert Drawdy and Doris Steedley. State Farm, the insurer of the truck driven by Robert Drawdy, moved for summary judgment, but its motion was denied. We granted State Farm's application for interlocutory review of the denial of summary judgment, and now reverse.

Robert's grandfather, Grover Drawdy, purchased a truck from

McKinna Auto Sales and gave McKinna a check post-dated January 2, 1990. Grover took possession of the truck on December 30, 1989, when he had a State Farm policy of liability insurance on his automobile. A former McKinna employee testified by affidavit that, before allowing Grover to take possession of the truck, he contacted a State Farm agent who orally bound coverage on the truck under Grover's existing automobile policy. On January 2, 1990, Grover applied for and was issued a new policy on the truck.

The policies on both the old automobile and the new truck required the insured to give State Farm written notice of an "accident or loss" as soon as reasonably practicable as a condition of recovering under the policy. Although Robert told Grover about his accident with Steedley on January 2, 1990, Grover failed to notify State Farm; State Farm did not receive notice of the accident until September 27, 1990, when it was contacted by Steedley's attorney.

At the time of the collision, Steedley had uninsured motorist coverage in the amount of $15,000 per person under an Allstate automobile liability insurance policy.

1. State Farm first argues that the trial court should have granted its motion for summary judgment because the collision occurred before the effective date of the policy issued on the truck. However, an issue of fact remains regarding whether State Farm orally bound coverage of the truck under Drawdy's automobile liability insurance policy. State Farm's argument that the McKinna employee's testimony as to out-of-court statements made by the State Farm agent constitutes inadmissible hearsay succumbs to the verbal act exception to the hearsay rule. See 2 McCormick on Evidence, p. 101, § 249 (4th ed. 1992). Therefore, the trial court properly denied State Farm's motion for summary judgment on this ground.

2. State Farm also contends summary judgment should have been granted based on the policy provision excluding coverage for lack of notice by the insured, which was rendered enforceable against Steedley by her access to uninsured motorist coverage. We agree.

"By mandating that all motor vehicle owners have at least $15,000 in liability insurance coverage, the Legislature established the public policy that innocent persons who are injured in accidents involving motor vehicles should be able to recover at least $15,000 of their damages. See *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335 (1, 2) (329 SE2d 136) (1985); OCGA § 33-34-1 et seq." *Auto-Owners Ins. Co. v. Jackson*, 211 Ga. App. 613, 614 (1) (440 SE2d 242) (1994). Based on this public policy of ensuring some recovery for injured third parties, we have held that a lack-of-notice exclusion generally is not enforceable against a third party injured by an insured who fails to notify his insurer. *Ginn v. State Farm &c. Ins. Co.*, 196 Ga. App. 640 (396 SE2d 582) (1990); see also *Neese*, 254 Ga. at 241.

In *Neese*, the Supreme Court held that a provision in an insurance policy excluding coverage for damages caused while an insured was attempting to avoid arrest was unenforceable against a third party as a matter of public policy. In doing so, it stated that the public's interests in the case were threefold: "(1) as insureds, to limit the insurer's risks and thereby keep automobile insurance premiums as low as possible; (2) as members of the public in general to improve safety on the highways; and (3) as accident victims, to have access to insurance funds to satisfy their judgments." Id. at 341. Giving great weight to the public policy that innocent persons injured in vehicle accidents should have access to some insurance funds, the Court invalidated the exclusion at issue. The Supreme Court in *Neese* nonetheless recognized that the public's interests in keeping premium costs down and improving safety on the highways would be fostered by enforcing the exclusion, and explicitly stated that the balancing of interests might produce a different conclusion if the innocent third party had access to other insurance: "We leave to a proper case the question of whether the existence of uninsured motorist coverage would affect the outcome in such a case." Id. at 341, n. 13.

*Travelers Ins. Co. v. Progressive Preferred Ins. Co.*, 193 Ga. App. 864 (389 SE2d 370) (1989), presented just such a case. In *Progressive Preferred*, which involved an unlicensed driver exclusion, we considered the competing interests discussed in *Neese* and held that the exclusion should be enforced as written where the injured third party had access to other insurance funds through uninsured motorist coverage. And in *Auto-Owners* we followed *Progressive Preferred* and held that an exclusion for damage intentionally caused by the insured is enforceable against a third party if the third party has access to uninsured motorist coverage. See 211 Ga. App. at 613.

The dissenters suggest that *Auto-Owners* and *Progressive Preferred* were implicitly disapproved by language in *Cotton States Mut. Ins. Co. v. Starnes*, 260 Ga. 235, 238 (392 SE2d 3) (1990) stating that "[t]he policy behind uninsured motorist coverage is to protect the insured's assets, not the public." *Starnes* did not even involve the enforceability of a contractual exclusion in an insurance policy, though it did present the analogous question of the continued viability of the "rule of election" in light of OCGA § 33-34-1 et seq. (the Georgia Motor Vehicle Accident Reparations Act): Given the public policy that innocent persons injured in a vehicular accident should be able to recover at least $15,000 of their damages, should an "additional insured" (in *Starnes*, a vehicle operator who is not a named insured but is driving the named insured's vehicle with his permission) be able to choose not to rely on the car owner's insurance? Rejecting the insurer's argument that the additional insured and the insurer would be forced into a contractual relationship neither desires, the Court con-

cluded that the "rule of election" must bow to the public policy of allowing recovery to third persons. However, the Court noted that the "rule of election" could continue if the additional insured has access to an alternative source of liability coverage, as the rule would not conflict with public policy in that circumstance. See 260 Ga. at 237. This holding, of course, is fully consistent with *Auto-Owners* and *Progressive Preferred*.

It is further notable that in *Starnes* there was no evidence that the innocent third party had uninsured motorist coverage. Rather, the insurer had argued that it was never necessary for the additional insured to be covered to protect third parties "because state law requires uninsured motorist coverage." As the Court noted, however, the basic premise of this argument was simply incorrect, since insureds can choose not to have uninsured motorist coverage. 260 Ga. at 238.

Under the *Neese* analysis, the relevant question is whether the public policy of ensuring some recovery for the third party is satisfied by the third party's access to a recovery through uninsured motorist coverage. We answer that question here in the positive. And because the policy of ensuring some recovery is satisfied, the public's interests in low premiums and safe highways prevail in the *Neese* balancing process, resulting in a decision to enforce the exclusion. A consideration of the purpose of uninsured motorist coverage and whether the primary purposes of liability and uninsured motorist coverage are the same plays no role in this analysis. Accordingly, the language in *Starnes* about the purpose of uninsured motorist coverage is irrelevant.

*Judgment reversed. Birdsong, P. J., Andrews, Johnson, and Smith, JJ., concur. Beasley, C. J., Blackburn and Ruffin, JJ., dissent. McMurray, P. J., disqualified.*

BLACKBURN, Judge, concurring in part and dissenting in part.

I concur with Division 1 and concur in part with the judgment of the majority. I agree with the majority that *Neese* and *Starnes* require that State Farm's motion for summary judgment be granted, as to the limitation of its liability under the policy, but only as to the amount of coverage required by law, notwithstanding that its insurance contract provides coverage amounts above such limit. To the extent that the insurance contract provides additional coverage, State Farm can properly assert its exclusion and deny coverage beyond that amount. However, I agree with Judge Beasley that, the exclusion based upon the condition precedent of notice of the accident to State Farm by its insured contained in the insurance contract is unenforceable as against public policy to the extent of the liability insurance

required by law (presently $15,000).[1]

"Prior to 1963, liability insurance was purchased in Georgia for the benefit and protection of the insured and his or her assets." *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335, 337 (329 SE2d 136) (1985). In 1963, the Georgia legislature adopted an uninsured motorist act which required uninsured motorist coverage to be offered, but its purchase was not required. See OCGA § 33-7-11. "As with liability insurance, uninsured motorist protection was for the benefit of the insured, not the driver of a vehicle struck by the insured." Id. However, upon the adoption of the 1974 Motor Vehicle Accident Reparations (no-fault) Act, *"liability insurance was required by law not only for the benefit of the insured but to ensure compensation for innocent victims of negligent motorists."* (Emphasis supplied.) Id. at 337.

In *Neese*, the Supreme Court determined that an exclusion in a policy of automobile insurance, which excluded liability coverage while an insured "attempt[ed] to avoid apprehension or arrest," was unenforceable as a matter of public policy in view of Georgia's compulsory insurance law, but *only* to the extent of insurance coverage required by law.[2] Id. at 341-342. In construing the insurance contract before it, the Supreme Court "noted two aids to construction: (1) An insurance contract is to be construed against the insurer which drafted it, and (2) the advent of compulsory motor vehicle liability insurance in this state established the public policy that 'innocent persons who are injured should have an adequate recourse for the recovery of their damages.' [Cit.]" Id. at 338. The Court determined in that case, that the public's identifiable interests were at least threefold: "(1) as insureds, to limit the insurer's risks and thereby keep automobile insurance premiums as low as possible; (2) as members of the public in general to improve safety on the highways; and (3) as accident victims, to have access to insurance funds to satisfy their judgments." Id. at 341.

In *Travelers Ins. Co. v. Progressive Preferred Ins. Co.*, 193 Ga. App. 864, 865 (389 SE2d 370), cert. denied, 193 Ga. App. 911 (1989), this court applied the analysis of *Neese*, supra, and determined that an unlicensed driver exclusion was enforceable against its insured when the victim had access to uninsured motorist coverage, as it provided adequate recourse for the recovery of her damages. The court noted that the public policy interest in enforcement of the unlicensed

---

[1] The Motor Vehicle Accident Reparations Act, OCGA § 33-34-1 et seq., requires that bodily injury liability insurance be purchased in, at least, the amount of $15,000 per person in any one accident and $30,000 for two or more persons in any one accident, for the operation of any motor vehicle registered in Georgia. See also OCGA § 40-9-37 (a).

[2] To the extent more coverage than that required by the law was available, the exclusion was enforceable. Id.

driver exclusion was very strong. Id. In *Auto-Owners Ins. Co. v. Jackson*, 211 Ga. App. 613, 615 (440 SE2d 242) (1994), cert. not applied for, we followed the analysis of *Travelers*, supra, and *Neese*, supra, to determine that an exclusion in an automobile liability policy, which excluded coverage for intentionally caused bodily injury or property damage, was enforceable between the insurer and its insured, "[i]f the injured third party has or had access to a recovery through uninsured motorist coverage under another policy."

In the year following our holding in *Travelers*, supra, our Supreme Court was presented with an analogous issue in *Cotton States Mut. Ins. Co. v. Starnes*, 260 Ga. 235, 237 (392 SE2d 3) (1990), in which they held that public policy was "no longer merely concerned with the right of an individual to elect whether to seek the benefits of an insurance policy. Instead, it is *also* concerned with providing adequate resources with which to compensate victims of automobile accidents, *a new class of beneficiaries to automobile liability insurance contracts.*" (Emphasis supplied.)

The issue presented was whether an "additional insured" under the automobile owner's compulsory liability insurance policy had the right to decline coverage under the traditional "rule of election." The liability insurance company argued that there was no need for its "additional insured" to have liability insurance because state law required uninsured motorist coverage. Id. at 238. However, the Supreme Court rejected this argument stating "1) State law does not require a motorist to purchase uninsured motorist coverage, OCGA § 33-7-11 (a) (3); and 2) The policy behind uninsured motorist coverage is to protect the insured's assets, not the public. [Cit.]" *Starnes*, 260 Ga. at 238.

In the present case, the insurance contract required written notice of an "accident or loss" as soon as practicable as a condition precedent to any action. State Farm argues that it should be allowed to exclude coverage pursuant to Drawdy's failure to notify it of the loss for some eight months.

In *Ginn v. State Farm &c. Ins. Co.*, 196 Ga. App. 640, 642 (396 SE2d 582) (1990), we determined that "[c]oncerning third parties, lack of notice of accident is not a viable defense available to an insurer, and considerations of excusable delay or prejudice are immaterial." Pursuant to *Ginn*, State Farm's condition precedent to suit is unenforceable.[3] However, State Farm argues that as uninsured motorists benefits are available to the victim, the public policy considerations of providing recourse to victims is no longer present because the

---

[3] The present case does not implicate OCGA § 33-7-15 as State Farm received notice of the complaint.

victim can obtain relief through its uninsured motorist carrier,[4] and it should be able to rely on its notice requirement as a bar to coverage. I cannot agree.

The public policy behind compulsory liability insurance was for the *protection of victims*. See 1974 Motor Vehicle Accident Reparations Act. The public policy behind uninsured motorist coverage was for the *protection of the insured's assets*. See *Starnes*, supra at 238. The rationale of *Travelers*, supra, and *Jackson*, supra, is inconsistent with public policy as determined by our Supreme Court. To permit the defendant's liability carrier to benefit from premiums paid by the plaintiff (the uninsured motorist insured) protects the assets of the liability carrier, not those of the insured, in contravention of stated public policy.

The public policy that *"liability insurance was required . . . to ensure compensation for innocent victims of negligent motorists,"* *Neese*, supra at 337, does not relate to the presence or absence of uninsured motorist coverage, but rests on its own bottom. The allowance of the subject exclusion where there is uninsured motorist coverage eviscerates the public policy as the innocent victim is not then compensated *by liability insurance*, but rather by uninsured motorist insurance paid for by said victim. Such an allowance also violates well settled principles of collateral sources.

In *Travelers*, supra, this court implies that the enforcement of the "unlicensed driver exclusion" improves safety on the highway (presumably because fewer unlicensed persons would be driving because they are not insured). There is no factual basis for this conclusion, and indeed if it were true, then we should permit "driving under the influence exclusions" as a means to reduce drunk driving. If the logic of *Travelers*, supra, is correct, we could accomplish this by the simple expedient of having victims compensated by their own uninsured motorist carrier rather than by the drunk driver's liability carrier.

This court also based its opinion in *Travelers*, supra, on the assumption that the insurer's risks would be limited and therefor premiums would be kept as low as possible. Where we are simply shifting the risk of loss from the liability carrier to the uninsured motorist carrier, any reduction in liability premiums (paid by the tortfeasor) would be reflected in increases in the uninsured motorist insurance premiums (paid by the victim).

The last reason cited by this court for its ruling in *Travelers*, supra, related to the access to insurance funds by accident victims to

---

[4] "A motor vehicle is uninsured if there is no liability insurance on it, or if the insurer of such vehicle legally denies coverage." *Neese*, 254 Ga. at 337.

satisfy their judgments. It is true that where there is uninsured motorist coverage available, there should be insurance funds available for accident victims. This is true, however, whether or not there is uninsured motorist insurance involved, and whether or not the exclusion herein involved is enforceable. It ignores the fact that public policy provides that victims should be compensated primarily by liability insurance and that uninsured motorist coverage was intended to be secondary or backup coverage. It also ignores the shift in premium costs from the tortfeasors to the victims.

While this court relied upon the above factors referred to in *Neese*, supra, it is important to note that said case did not involve the issue of uninsured motorist coverage and our Supreme Court specifically stated therein that it would wait for a proper case to determine whether the existence of uninsured motorist coverage would affect the result in such a case.

To the extent that *Travelers*, supra, and *Jackson*, supra, relied solely on the existence of uninsured motorist coverage to find the exclusions therein enforceable, I would overrule them.

I am authorized to state that Judge Ruffin joins in this dissent.

BEASLEY, Chief Judge, dissenting.

The majority holds that State Farm is entitled to a judicial declaration that it is not liable for damages resulting from the January 1, 1990, collision. I concur in Division 1 and dissent to the extent set out herein, with respect to Division 2.

First, as it relates to the facts here involved, it is implied but not stated that Steedley filed an action against Robert Drawdy seeking a recovery for personal injuries and property damage.

State Farm moved for summary judgment on three grounds: the collision occurred before the effective date of the policy issued on the truck, and Steedley's access to $15,000 in uninsured motorist coverage renders its defense based upon lack of notice by Drawdy under both the auto and truck policies fully effectual. State Farm sought partial summary judgment as an alternative. It urged that, due to the lack of notice, it would not be liable for any amount exceeding $15,000, which represents the single person liability limit under Georgia's compulsory automobile insurance law.

In resolving the question of whether Steedley's access to $15,000 in uninsured motorist coverage renders State Farm's defense based upon lack of notice fully effectual, we must first determine whether the public policy underlying our compulsory automobile liability insurance law renders that defense unenforceable in an action by a third party against the insured.

That question was answered in the affirmative in *Ginn v. State Farm &c. Ins. Co.*, 196 Ga. App. 640 (396 SE2d 582) (1990). The rea-

son is the protection of the interest of accident victims in having access to insurance funds to satisfy their judgments. See *Young v. Allstate Ins. Co.*, 248 Ga. 350, 352 (282 SE2d 115) (1981); see generally *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335, 340-341 (1) (329 SE2d 136) (1985), which identified three public interests to be balanced: (1) that of insureds, to limit the insurer's risks and thereby keep automobile insurance premiums as low as possible; (2) that of members of the public in general to improve safety on the highways; and (3) that of accident victims, to have access to insurance funds to satisfy their judgments.

We must next determine whether the victim's access to uninsured motorist coverage rejuvenates an otherwise unenforceable defense by the defendant's liability insurer.

*Auto-Owners Ins. Co. v. Jackson*, 211 Ga. App. 613, 614 (1) (440 SE2d 242) (1994), and *Travelers Ins. Co. v. Progressive Preferred Ins. Co.*, 193 Ga. App. 864 (389 SE2d 370) (1989), support State Farm's argument that public policy does not mandate that the defendant have liability insurance where the victim has access to uninsured motorist coverage. See also *Neese*, supra at 341. These cases involve the enforceability of exclusionary clauses in automobile liability insurance policies in actions by third parties against the insureds.[5]

In *Neese*, the victim had no automobile insurance and thus no uninsured motorist coverage. 254 Ga. at 341. The Court noted that even if he had had liability insurance, under our law he could have chosen not to purchase uninsured motorist protection. In footnote 13, the Court then stated, "We leave to a proper case the question of whether the existence of uninsured motorist coverage would affect the outcome in such a case." *Progressive Preferred* and *Auto-Owners* were such cases. There we held that the victims' access to a recovery through uninsured motorist coverage validates an otherwise unenforceable exclusion in the liability insurance policy of the party who caused the accident. However, in *Cotton States Mut. Ins. Co. v. Starnes*, 260 Ga. 235, 238 (392 SE2d 3) (1990), which postdated *Progressive Preferred* but predated *Auto-Owners*, the Supreme Court rejected the argument that uninsured motorist coverage averts the victim's need for the defendant to have liability insurance, stating that a motorist is not required to purchase such coverage *and* that the policy behind uninsured motorist coverage is to protect the insured's assets and not the public.

Under *Starnes*, the trial court correctly denied State Farm's motion for summary judgment on its second ground. To the extent that

---

[5] Compare *Protective Ins. Co. v. Johnson*, 256 Ga. 713 (1) (352 SE2d 760) (1987), and *Snow v. Atlanta Intl. Ins. Co.*, 182 Ga. App. 1 (354 SE2d 644) (1987), involving the enforceability of notice defenses in actions by the insureds against their insurers.

they are inconsistent with *Starnes, Progressive Preferred* and *Auto-Owners* should no longer be followed.

Nonetheless, *Neese,* supra at 341-342 (2), and *Starnes v. Cotton States Mut. Ins. Co.,* 194 Ga. App. 320, 322 (1) (390 SE2d 419) (1990), aff'd on other grounds, *Cotton States Mut. Ins. Co. v. Starnes,* supra, continue to support State Farm's argument that its defense based on lack of notice by its insured is unenforceable as against public policy only to the extent of the $15,000 mandatory liability coverage provided by the policy. This issue was not addressed in *Ginn,* supra. It was error to deny State Farm's motion for partial summary judgment.

The judgment of the trial court should be affirmed in part and reversed in part.

DECIDED MARCH 31, 1995.

*Dillard, Bower & East, Bryant H. Bower, Jr., Robert W. Lamb,* for appellant.

Robert T. Drawdy, *pro se.*