A95A2208. FLORIDA INTERNATIONAL INDEMNITY
COMPANY v. GUEST et al.
(464 SE2d 847)

SMITH, Judge.

In this appeal, we must construe a commercial truck policy endorsement excluding coverage for trips exceeding a 150-mile radius of the insured's principal garage. We conclude that the endorsement applies to exclude coverage for a trip exceeding the 150-mile radius, even if the accident occurs after the vehicle has re-entered the radius.

Florida International Indemnity Company issued a commercial truck policy to James Guest for his logging business. An endorsement attached to the policy, for which a separate premium was assessed, provided as follows: "Commercial Automobile — Exclusive Mileage

Limitation: It is agreed that the insurance with respect to the automobile designated in the policy does not apply, if any trips of the automobile exceed a 150 mile radius of the limits of the city or town where such automobile is principally garaged as stated in the policy."

While Guest was returning from a trip hauling garbage to Panama City, Florida, he collided with Jeffrey Smith.[1] The collision occurred in Jones County, between Gray and Eatonton, Georgia on Highway 129 North. While Panama City is more than 150 miles from Comer, Madison County, Georgia, Guest's "principal garage," the site of the accident is well within the 150-mile radius.

Smith sued for personal injuries, and Florida International filed an action seeking a declaration of its obligations under the policy. Florida International moved for summary judgment on several issues, including the trip exclusion endorsement. The trial court denied the motion and entered a final judgment declaring coverage under the policy. Florida International appeals.

Florida International acknowledges that the exclusion is inapplicable to any minimum amount of insurance required under the Georgia No-Fault Law, former OCGA § 33-34-1 et seq., which was in effect at the time of the collision. See *Empire Fire &c. Ins. Co. v. Dobbins*, 205 Ga. App. 700, 702, n. 2 (423 SE2d 396) (1992).[2] We must decide whether the language at issue here excludes coverage above the no-fault minimums for the entire trip as a whole when the trip is to a destination beyond the 150-mile radius, or whether coverage resumes (even on a forbidden trip) once the vehicle re-enters the 150-mile radius.

No previous Georgia decision interprets the precise policy language at issue here. In *Wallace v. Va. Surety Co.*, 80 Ga. App. 50 (55 SE2d 259) (1949), the insured was returning from a 725-mile trip but had re-entered the 500-mile radius of the policy exclusion. The case was submitted to the trial court on stipulated facts, and the trial court entered a declaratory judgment in favor of the insurer. The exclusion provided: "In consideration of the premium at which the policy is written, it is agreed that the automobile or automobiles described in the policy will be used and operated entirely within a radius of 500 miles. . . . It is further agreed that the company shall not be liable for . . . any accident or loss occurring while the automobile or automobiles described in the policy are being operated outside of the radius of 500 miles." Id. at 51. The first policy provision was

---

[1] Guest and his company have gone into default and bankruptcy and have not participated in this appeal.

[2] The issue presented here did not directly arise in *Empire,* because there was no question in that case that the vehicle was outside the radius at the time of the loss, and the claim was for first-party theft coverage rather than liability.

interpreted as a warranty, and the operation of the vehicle beyond the 500-mile radius "constituted a breach of the contract which released the defendant from the obligation to perform its covenants under the contract of insurance in so far as that particular trip was concerned" and authorized the insurer to declare the policy void as to that trip in its entirety. Id. at 53. Judgment in favor of the insurer was therefore affirmed.

In *Canal Ins. Co. v. Baldree*, 489 F2d 1393 (5th Cir. 1974), the former Fifth Circuit construed under Georgia law an exclusion providing: "insurance applies only while the respective vehicles are operated within the radius indicated for each vehicle. . . . [N]o vehicle is covered if operated beyond its radius. . . . It is expressly understood and agreed that occasional trips beyond the radius specified are not permitted." Id. at 1394, n. 2. Distinguishing *Wallace* on the basis that the policy in *Wallace* contained a promissory warranty, the court concluded that, under this policy language, coverage resumed as soon as the vehicle re-entered the "magic circle." Id. at 1395.

Since no "warranty" appears in the policy at issue here, we must look to the language of the specific exclusion itself, an issue not reached in *Wallace*. The terms of this exclusion are clearly distinguishable from those in both *Canal* and *Wallace*. The *Wallace* policy provided that there would be no liability for "any accident or loss occurring *while* the automobile or automobiles described in the policy *are being operated* outside of the radius of 500 miles." (Emphasis supplied.) *Wallace*, supra, 80 Ga. App. at 51. Similarly, the *Canal* policy provided that "insurance applies only *while* the respective vehicles *are operated* within the radius." (Emphasis supplied.) *Canal*, supra, 489 F2d at 1394, n. 2. In contrast, the language here excludes coverage "if any *trips* of the automobile exceed a 150 mile radius." Rather than focusing on the physical location of the vehicle at the time of the collision, the language of Florida International's endorsement looks to the destination of the trip on which the collision occurred. This endorsement therefore excludes from coverage a vehicle *throughout* a trip to and from a destination exceeding the mileage radius, regardless of the location of the vehicle at the time of the collision.

This Court noted in *Wallace* the general rule that an insurer is discharged if its risk is materially increased. *Wallace*, supra, 80 Ga. App. at 52-53. A "long-haul" commercial trip could involve greater hazards and risks over the course of the entire trip as a whole, and taking an insured vehicle on a long-haul trip could materially increase the risk to the insurer. Id. at 53. Such hazards and risks could include not only the obvious, such as the greater amount of time spent on the road and resulting fatigue, but also the less obvious, such as the strain of driving over unfamiliar roads or the temptation to continue the

homeward journey to its end despite poor driving conditions or lack of sleep.

"Competent parties are free to choose, insert, and agree to whatever provisions they desire in a contract, including insurance contracts, unless prohibited by statute or public policy." (Citations and punctuation omitted.) *Empire Fire & Marine,* supra, 205 Ga. App. at 701. Exclusions such as that in Florida International's policy are controlled by three competing public interests: "(1) as insureds, to limit the insurer's risks and thereby keep automobile insurance premiums as low as possible; (2) as members of the public in general to improve safety on the highways; and (3) as accident victims, to have access to insurance funds to satisfy their judgments." *Cotton States Mut. Ins. Co. v. Neese,* 254 Ga. 335, 341 (1) (329 SE2d 136) (1985). In balancing these considerations, the Supreme Court gave "great weight to the public policy that innocent persons injured in vehicle accidents should have access to *some* insurance funds." (Emphasis supplied.) *State Farm &c. Ins. Co. v. Drawdy,* 217 Ga. App. 236, 238 (456 SE2d 745) (1995).[3] In this case, as in *Drawdy,* "because the policy of ensuring some recovery is satisfied, the public's interests in low premiums and safe highways prevail in the *Neese* balancing process, resulting in a decision to enforce the exclusion." Id. at 239. Florida International's exclusion is enforceable to the extent of any amounts in excess of the required no-fault minimums, and the trial court erred in denying its motion for summary judgment and entering judgment as a matter of law declaring coverage under the policy in its full amount.

*Judgment reversed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED NOVEMBER 29, 1995.

*Michael L. Wetzel,* for appellant.

*Nelson & Hill, Janet E. Hill, Lane, O'Brien, Caswell & Taylor, Stephen J. Caswell, John O. Bouwsma,* for appellees.

---

[3] Florida International concedes liability to the extent of the required no-fault coverage, and we therefore do not reach the competing public policy concerns of no-fault and uninsured motorist coverage, extensively discussed in *Drawdy.*