Rodney WIMBERLY, et. al., Plaintiffs,

v.

EMPIRE FIRE AND MARINE INSURANCE COMPANY, Defendant.

No. Civ.A. JFM–00–3425.

United States District Court, D. Maryland.

March 28, 2002.

David L. Moore, Baltimore, MD, for plaintiffs.

James X. Crogan, Jr., McNamara, Fizer & Dent, Baltimore, MD, for defendant.

## OPINION

MOTZ, District Judge.

Plaintiffs Rodney Wimberly and National Consumers Insurance Co. ("National Consumers") have brought suit against Empire Fire and Marine Insurance Co., seeking to collect more than $1.6 million in state court judgments resulting from an automobile accident in which Wimberly was injured. Plaintiffs and defendant both have moved for summary judgment. Plaintiffs' motion will be denied, and defendant's cross-motion will be granted.

### I.

On October 12, 1993, Wimberly was a passenger in an automobile driven by Terrice Dewayne Coombs. According to police, Coombs fell asleep at the wheel while driving southbound on Interstate 83 in Baltimore County. The car veered off the highway and struck a tree. Wimberly suffered injuries that rendered him a quadriplegic.

Wimberly filed suit on October 7, 1996, in the Circuit Court for Baltimore County, alleging negligence by Coombs and three other parties: Towanda Hillman, who had rented the car but was not in it at the time of the accident; McFrugal Auto Rental, Inc., the Georgia agency from which Hillman rented the car; and McRent a Car, Inc., which plaintiffs allege was a successor in interest to McFrugal.[1] A default judgment was entered in favor of Wimberly in the amount of $1,411,208.95 plus interest and costs.[2] Judgment also was entered in favor of National Consumers on a subrogation claim in the amount of $233,653.38 plus interest and costs. National Consumers had paid Wimberly's medical expenses, in addition to a $15,000 claim for uninsured motorist coverage, pursuant to an automobile insurance policy it issued to Wimberly's mother. Wimberly qualified for benefits under the policy because he lived with his mother.

In this suit, which was removed from the Circuit Court for Baltimore County, Wimberly and National Consumers seek a declaration that Empire is obligated to pay the state court judgments, plus interest and costs. At the time the accident occurred, an Empire insurance policy provided excess auto liability coverage to McFrugal—that is, coverage for claims exceeding the $50,000 per-accident limit that McFrugal represented to Empire that it was self-insuring. (Def.'s Mem.Ex. A; Balus Dep. at 13.) The policy covered McFrugal itself, McFrugal's officers and employees while acting within the scope of their duties, and "[a]nyone else ... while using with [McFrugal's] permission a covered 'auto'...." (Def's Mem.Ex. A.) It expressly excluded, however, "[t]he 'rentee' or any

---

1. The exact relationship between McFrugal and McRent a Car has not been established. Empire denies it ever insured an entity known as McRent a Car. The record is also somewhat thin on the question of whether McFrugal was the agency from which Hillman rented the car. However, for the purpose of the present motions, I will assume that it was a McFrugal rental vehicle involved in the accident.

2. Empire argues that the state court judgment should not be given effect here because it did not itemize damages, as required by Md.Cts. & Jud.Proc. § 11–109(b). However, the state court judge did itemize damages in his ruling from the bench, awarding Wimberly $208,520.95 for medical expenses, $852,688.00 for economic loss, and $350,000.00 for pain and suffering. (*See* Pls.' Resp. & Opp'n Attach. B.) This itemization constituted the functional equivalent of a special verdict form. *Cf. Wyatt v. Johnson*, 103 Md.App. 250, 653 A.2d 496, 503 (1995).

driver designated in a 'rental agreement'." (*Id.*) [3]

## II.

 Under Georgia law, which applies here,[4] a car rental agency is required to verify that a renter has automobile insurance. If the renter has no insurance, the agency must provide her with "spot" insurance coverage before she leases the vehicle. *A. Atlanta Autosave, Inc. v. Generali–U.S. Branch,* 270 Ga. 757, 514 S.E.2d 651, 653 (1999). If a rental agency attempts to verify that the renter has insurance and erroneously concludes that she does, the agency's own insurance provides coverage to someone injured by the renter (or someone designated in the rental agreement as an additional driver). *See id.* at 653–54. The liability of a self-insured company may be limited to the statutory minimum coverage required by Georgia law,[5] but only if the self-insurer has filed a self-insurance plan with Georgia's Commissioner of Insurance that states the limits of its liability. *See Ryan v. Boyd,* 911 F.Supp. 524, 526 (M.D.Ga. 1996). Otherwise, the self-insurer is potentially liable to the full extent of its self-insurance coverage. *See id.*

 Plaintiffs allege that McFrugal did not verify that Hillman or Coombs had insurance and that therefore under *Generali* it was responsible for providing coverage for the accident in which Wimberly was injured. Further, plaintiffs argue, since McFrugal did not have any self-insurance at all, its liability is unlimited.

 I will assume that both prongs of plaintiffs' argument are meritorious.[6]

---

3. The record does not contain a copy of the alleged rental agreement between Hillman and McFrugal. Therefore, it is impossible to ascertain whether Coombs was an additional driver designated in that agreement. However, for purposes of analysis, this fact is immaterial. If Coombs was so designated, he was expressly excluded from coverage under the terms of the excess policy. If he was not so designated, he was not covered by the excess policy in the first instance since he was not driving the car rented by Hillman with McFrugal's permission.

4. Federal courts sitting in diversity apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In this case, the parties agree that under the Maryland choice of law principle of *lex loci contractus,* Georgia law applies because the insurance contract at issue here was delivered to McFrugal's agent in Georgia, where McFrugal did business and where the car involved in this case was rented *See Allstate Ins. Co. v. Hart,* 327 Md. 526, 611 A.2d 100, 101 (1992).

5. In 1993, at the time of the rental transaction and accident at issue here, Georgia law required automobile liability policies in the state to provide at least $15,000 in coverage for the bodily injury or death of one person in one accident, and at least $30,000 for the bodily injury or death of two or more people in one accident. *See* Ga.Code Ann. § 40–9–37(a).

6. The record is not entirely clear, however, that either assumption is accurate. The only evidence that Hillman and Coombs were not insured is that National Consumers claims that it conducted an investigation and determined that neither of the two carried insurance. Technically, this is hearsay. Moreover, Wimberly himself testified on deposition that he recalls that Hillman presented insurance information when she rented the car. (Wimberly Dep. at 22, 24.)

As to the question of McFrugal's self-insurance, although Empire admits to having learned that McFrugal was not self-insured in "mid to late" 1993 or 1994 (*see* Balus Dep. at 41), this does not establish that McFrugal was not self-insured on October 12, 1993, the date of the accident.

I might add that I have considered one argument not advanced by plaintiffs in connection with Empire's admission that it received notice that McFrugal was not self-insured. Arguably, as a matter of public poli-

However, what is at issue here is not the extent of McFrugal's liability but the extent, if any, of Empire's liability. The mere fact that McFrugal's liability is unlimited does not render Empire liable under the excess policy it wrote for McFrugal.[7] While in one sense the excess policy might be considered to be one of McFrugal's assets, it is an asset which, by virtue of its own express terms, can be reached by only a defined class of McFrugal's creditors. The policy covers only persons injured in accidents caused by the negligence of McFrugal's officers and employees working within the scope of their duties or other persons driving McFrugal's vehicles with McFrugal's permission, *other than rentees and other drivers designated in a rental agreement.*[8] (*See* Def.'s Mem.Ex. A.) The latter exclusion is clear and unequivocal. Since Wimberly was injured in an accident caused by the negligence of Coombs—who either was a additional driver designated on Hillman's rental agreement and thus excluded from coverage or a driver not listed on the rental agreement and thus not driving the rental car with McFrugal's permission—plaintiffs do not fall within the class of persons who may enforce a claim against the excess policy.

The only remaining question is whether enforcement of the exclusion of rentees and other drivers in Empire's policy under the circumstances of this case would violate Georgia's public policy. The answer to that question is clearly no. Of course, Georgia—like all other states—does have a public policy strongly favoring compensation of innocent accident victims. However, this policy is limited in scope. It extends only to the minimum coverage limits mandated by Georgia's compulsory insurance law. *See Cotton States Mut. Ins. Co. v. Neese,* 254 Ga. 335, 329 S.E.2d 136, 142 (1985). Thus, exclusions have been enforced where the injured party, like Wimberly, has received funds through an uninsured motorist policy providing coverage equal to or greater than the statutorily

---

cy, an excess insurer learning such information is under a tort duty to the general public to cure the situation or report the matter to regulatory authorities. Assuming that to be the case, however, the imprecision in the record as to when Empire learned of McFrugal's lack of self-insurance would prevent plaintiffs from prevailing under this theory. According to the deposition testimony of Empire's vice president of claims for special operations, it did issue a policy in February or April 1994 providing primary coverage to McFrugal after having first been assured by McFrugal that it was taking steps to rectify the problem. (Balus Dep. at 41–43.) In any event, to prevail under a "cure/notification" theory plaintiffs would have to overcome a number of substantial legal obstacles, including (1) the very existence of the asserted tort duty, (2) the applicability of the duty to a risk not insured by the excess insurer, and (3) the recoverability of damages in excess of the minimum limits set by Georgia's compulsory insurance law.

7. Plaintiffs assert that *St. Paul Fire & Marine Ins. Co. v. Goza,* 137 Ga.App. 581, 224 S.E.2d

429 (1976), when considered in conjunction with *Generali* and *Ryan,* establishes their right to benefits under the Empire policy. However, *Goza,* which was decided in the context of uninsured motorist coverage, does not create a right for a plaintiff to receive the benefits of an excess automobile liability policy that expressly does not apply. Rather, it merely stands for the proposition that an insured who *is* covered by two policies, one primary and one excess or umbrella, may access the excess policy to fully recover uninsured motorist benefits that have not been waived or rejected. 224 S.E.2d at 430–31.

8. Plaintiffs' complaint in the Circuit Court for Baltimore County makes a conclusory averment that Coombs was acting as an "agent, servant and/or employee" of Hillman and McFrugal. Compl. ¶ 8, *Wimberly v. Coombs,* No. 03–C–96–10196 (Cir.Ct. for Baltimore Co. Oct. 7, 1996). However, no specific allegations were made supporting that averment, and the factual record is clear that Coombs was simply the driver of a car allegedly rented by Hillman from McFrugal.

mandated minimum compensation. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Drawdy,* 217 Ga.App. 236, 456 S.E.2d 745, 746–47 (1995); *Auto–Owners Ins. Co. v. Jackson,* 211 Ga.App. 613, 440 S.E.2d 242, 244–45 (1994); *Travelers Ins. Co. v. Progressive Preferred Ins. Co.,* 193 Ga.App. 864, 389 S.E.2d 370, 371 (1989). As Georgia's intermediate appellate court explained in *Drawdy,* once the state's public policy of ensuring a minimum recovery to accident victims is satisfied, the public's interest in low insurance premiums tips the balance of policy considerations toward enforcing exclusions as they are written in insurance contracts. 456 S.E.2d at 747.[9]

### III.

■ Even if the policy could have been invoked to cover damages stemming from the negligence of the rentee or other driver designated on the rental agreement, Empire still would be entitled to summary judgment because it was not timely notified of the accident and loss as required by the policy.

The policy contains a detailed description of the actions McFrugal must take in the event of an accident or loss. (*See* Def.'s Mem.Ex. A.) These steps include advising Empire "immediately" of a loss that "may potentially exceed [McFrugal's] 'self-insurance' limit of $50,000." (*Id.*) McFrugal also is obligated by the contract to notify Empire "whenever a 'loss' involves a fatality, amputation, spinal cord

damage, brain damage, blindness, extensive burns or multiple fractures." (*Id.*) The accident in this case, with its massive injury to Wimberly and the significant medical expenses that could have been expected to result from it, triggered a contractual obligation by McFrugal to report the loss to Empire.

Despite these contract provisions, Empire was not notified of the loss until after plaintiffs had filed their state court suit on October 7, 1996, almost three years after the accident. In a letter dated June 4, 1997, Empire states that it had "received notice of loss and a lawsuit" involving Wimberly.[10] (Pls.' Mem.Attach. E.) Although the letter does not give a precise date that Empire received notice, it states that "[t]he recently received lawsuit was our first notice of this claim." (*Id.*) Even if Empire had received notice on the date plaintiffs commenced the state court suit, no reasonable juror could find that such notification—coming three years after an accident and loss—was made "immediately." Therefore, McFrugal violated the loss notification provisions of the contract.

The failure by an insured to notify an insurer of a loss has been found to constitute grounds under Georgia law for denying recovery to an injured third party who had access to his or her own UM coverage. *See Drawdy,* 456 S.E.2d at 747. In *Drawdy,* the insurer did not learn of the accident and loss involving its insured until more than nine months after it occurred,

**9.** The uninsured motorist payment made to Wimberly makes it clear that under Georgia law the exclusion contained in Empire's policy can be enforced without violating Georgia's public policy. By referring to that payment, however, I do not mean to hold implicitly that an excess insurer can be required to provide "drop down" coverage up to the minimum limit required by Georgia's compulsory insurance law where there is no primary coverage, particularly where the excess policy did not cover the risk that result-

ed in the accident. That is a question that can be decided by the Georgia courts when and if it arises.

**10.** Empire also provides a copy of a letter to Empire from the insurer for a defendant who was dismissed from the state court suit. This letter is dated May 14, 1997. (Def.'s Mem.Ex. C.) Empire calls this its first notice of both the accident and the lawsuit. (Def.'s Mem. at 6.)

when the insurer was contacted by the plaintiff's attorney. *See id.* *Drawdy* is directly on point to this case. Indeed, the delay in notification here is more than four times as long as that in *Drawdy*, and thus all the more prejudicial to the insurer. Moreover, Wimberly, like the plaintiff in *Drawdy*, had access to UM benefits (through his mother's insurance policy), thus satisfying the Georgia public policy of "ensuring some recovery for the third party. . . ." *Id.* Thus, the untimely notice given to Empire is fatal to plaintiffs' claims.

### IV.

Plaintiffs also assert a claim for uninsured motorist (UM) coverage. Empire's response to this claim is that a McFrugal official signed a form waiving UM coverage as part of McFrugal's contract with Empire. (*See* Def.'s Mem.Ex. E; *see also* Balus Aff. ¶¶ 6–7.) Plaintiffs do not dispute this evidence. Rather, they argue that such a waiver is not allowed pursuant to Georgia's uninsured motorist statute, Ga.Code Ann. § 33–7–11, and Georgia public policy.[11]

■ Georgia's uninsured motorist statute mandates that insurers offer UM coverage in certain minimum amounts in all motor vehicle liability policies delivered or issued in the state. *See* Ga.Code Ann. § 33–7–11(a)(1). However, the statute also contains an express provision whereby the insured can waive such coverage. *See* Ga.Code Ann. § 33–7–11(a)(3). That provision states: "The coverage required under paragraph (1) of this subsection shall not be applicable where any insured named in the policy shall reject the minimum coverage in writing." *Id.*

Although perhaps the statute could be interpreted, as plaintiffs suggest, to allow the waiver only of minimum coverage, not of all UM coverage, the Georgia courts have viewed it differently. They have stated that the statute allows an insured to reject UM coverage in its entirety, so long as the rejection is in writing. *See, e.g., Jones v. Georgia Farm Bureau Mut. Ins. Co.,* 248 Ga.App. 394, 546 S.E.2d 791, 793 (2001) (interpreting the UM waiver provision as offering an insured three options: "(1) *no UM coverage;* (2) minimum UM coverage; or (3) UM coverage in an amount greater than the minimum coverage and equal to or less than the regular liability limits under the policy") (emphasis added);[12] *Nat'l Union Fire Ins. Co. v. Johnson,* 183 Ga.App. 38, 357 S.E.2d 859, 860 (1987) (explaining that UM coverage can be waived in Georgia if the rejection is in writing).

That an insured can waive UM coverage entirely accords with the fact that UM coverage is intended primarily to protect the insured and others for whom the insured purchases the coverage. *See, e.g.,*

---

**11.** Plaintiffs do not articulate the basis on which Wimberly would have been entitled to UM coverage even if McFrugal had not waived the coverage. If their contention is that Wimberly had UM coverage because he was himself a covered driver or the passenger of a covered driver under Empire's policy, the contention fails for the reasons I have stated in section II of this opinion. If their contention is that he had UM coverage because he was a passenger in a covered vehicle, that is an issue which has not been briefed or argued by the parties. In any event, because McFrugal's waiver of UM coverage was clearly effec-

tive under Georgia law, I will assume that absent the waiver, Wimberly would have had UM coverage under the Empire policy.

**12.** The language of the relevant statutory provision recently was amended. This amendment clarifies the legislature's intent that an insured can waive UM coverage entirely. The amended Ga.Code Ann. § 33–7–11(a)(3) states: "The coverage required under paragraph (1) of this subsection shall not be applicable where any insured named in the policy shall reject the coverage in writing."

*Cotton States Mut. Ins. Co. v. Starnes,* 260 Ga. 235, 392 S.E.2d 3, 5 (1990) (explaining that "[s]tate law does not require a motorist to purchase uninsured motorist coverage" and noting that "[t]he policy behind uninsured motorist coverage is to protect the insured's assets, not the public"); *Neese,* 329 S.E.2d at 138 (noting that UM insurance is "for the benefit of the insured"). UM coverage, and the policy motivating it, thus is distinct from compulsory liability insurance, which is intended "not only for the benefit of the insured but to ensure compensation for innocent victims of negligent motorists." *Id.* at 139; *see also* 9 Couch on Insurance § 122:9 (3d ed.1997). If Wimberly had any right to the benefit of UM coverage, it would have been derived through McFrugal. McFrugal did not, however, choose to confer that benefit by paying an additional premium to Empire. This may have caused a misfortune for Wimberly. But his misfortune alone is not sufficient to impose upon Empire an obligation its contract with McFrugal did not create.[13]

For these reasons, I find that Empire is entitled to summary judgment.

### ORDER

For the reasons stated in the accompanying opinion, it is, this 28th day of March 2002 ORDERED

1. Plaintiffs' Motion for Summary Judgment is denied;

2. Defendant's Cross–Motion for Summary Judgment is granted;

3. Judgment is hereby entered in favor of the defendant.

---

**13.** Plaintiffs note that the statutory requirement that all automobile insurance policies include UM coverage has been interpreted by the Georgia courts to extend to excess or umbrella policies. *See Goza,* 224 S.E.2d at 431. However, *Goza* does not stand for the proposition that UM coverage in Georgia cannot be waived as part of an excess insurance contract. *Goza* did not involve a waiver but rather excess and primary policies that both afforded UM coverage. *Id.* at 430. It simply is not relevant here.