### A10A0965. HIX v. THE HERTZ CORPORATION.
(705 SE2d 219)

SMITH, Presiding Judge.

We granted William Hix's application for discretionary appeal to consider an issue of first impression: May a plaintiff in a garnishment action recover insurance proceeds from a self-insured car rental agency when the defendant renter was driving in violation of the rental agreement when he caused the accident? After reviewing the applicable law, we conclude that the trial court correctly applied the exclusion in the rental agreement to Hix's claim, and we therefore affirm the judgment.

The relevant facts in this case are not in dispute. On January 9, 2004, Carson Bolt rented an SUV from the Hertz Corporation. Bolt declined to purchase the optional liability insurance provided by Hertz. On January 19, 2004, while fleeing from sheriff's deputies at high speeds and while driving under the influence of drugs to the extent he was impaired, Bolt collided with a car driven by appellant Hix. Hix was injured and his wife was killed in the collision. In addition, Bolt was transporting drugs and stolen property in the SUV. Bolt pled guilty in Banks County to first degree vehicular homicide, serious injury by reckless driving, felony obstruction of an officer, felony fleeing and attempting to elude, and possession of methamphetamine.[1] He was sentenced to twenty years in prison and ten years on probation.

Hix sued Bolt and obtained a consent judgment for $5.1 million, agreeing not to seek to enforce the judgment against any of Bolt's personal assets. Bolt was the insured on a liability policy with Progressive Insurance Company, which paid the policy limits of $200,000 to Hix. In addition, Hix's insurance policy included uninsured motorist coverage with Cotton States Mutual Insurance Company, providing the statutory limits.

At the time of the collision, Hertz had on file with the Georgia insurance commissioner a self-insurance plan with a liability limit of $10 million. Bolt's rental agreement with Hertz prohibited certain uses of the vehicle, including "wilful or wanton misconduct, which among other things, may include reckless conduct such as . . . use off

---

[1] The stolen property charge, along with various fraud and deception charges, was pursued in another jurisdiction.

paved roads," using the vehicle "while legally intoxicated or under the influence of alcohol [or] drugs," and using the vehicle "for any purpose that could properly be charged as a crime, such as the illegal transportation of persons, drugs, or contraband." The rental agreement further provides:

> Any use of the car in a manner prohibited above: . . . . ii. To the extent permitted by applicable law, will cause you to lose the benefit of all personal accident insurance ("PAI") and personal effects coverage ("PEC"), liability insurance supplement ("LIS") coverage and liability protection provided by Hertz under this agreement.

It is undisputed that Bolt pled guilty to homicide by vehicle, causing serious injury by fleeing from law enforcement, driving recklessly by driving off the roadway, and driving under the influence. It is also undisputed that Bolt was charged in North Carolina with obtaining by false pretenses property found in the vehicle.

Hix filed this garnishment action against Hertz seeking recovery of the remainder of his judgment against Bolt from Hertz's self-insurance plan.[2] Both Hix and Hertz moved for summary judgment. In a lengthy and thorough order, the trial court granted both motions in part and denied them in part. The trial court correctly analyzed the applicable legal issues, and we therefore affirm.

While the precise issue presented here has not been decided, existing Georgia precedent is instructive. First, OCGA § 33-34-4 requires that Hertz provide coverage for its rental vehicles or self-insurance, once it demonstrates to the satisfaction of the state insurance commissioner that it "has and will continue to have the ability to provide coverages, benefits, and claims-handling procedures substantially equivalent to those afforded by a policy of vehicle insurance in compliance with this chapter." OCGA § 33-34-5.1 (a) (1). With respect to priority of coverage between Hertz's self-insurance and Bolt's liability policy,

> OCGA § 33-34-4 still requires car rental companies to insure the cars they own, but they enjoy special treatment in terms of coverage priority on cars rented to the public under OCGA § 40-9-102. Under OCGA § 40-9-102, the renter's liability insurance coverage is primary, and the rental company's liability insurance coverage is secondary

---

[2] The trial court held, and we agree, that a garnishment action is a proper vehicle for seeking a recovery here. See *Ross v. St. Paul Reinsurance Co.*, 279 Ga. 92, 94 (610 SE2d 57) (2005).

or excess. Code section 40-9-102, therefore, reverses the usual order of liability coverage inasmuch as the renter's coverage is primary and the owner's coverage is secondary.

(Citations and punctuation omitted.) *Zurich American Ins. Co. v. Gen. Car & Truck Leasing System*, 258 Ga. App. 733, 735 (2) (574 SE2d 914) (2002).

Here, we must consider whether Bolt's violation of the rental agreement amounts to an exclusion of coverage under Hertz's self-insurance plan. Exclusions are enforceable in insurance policies generally, except when public policy mandates otherwise.

> Competent parties are free to choose, insert, and agree to whatever provisions they desire in a contract, including insurance contracts, unless prohibited by statute or public policy. Exclusions . . . are controlled by three competing public interests: (1) as insureds, to limit the insurer's risks and thereby keep automobile insurance premiums as low as possible; (2) as members of the public in general to improve safety on the highways; and (3) as accident victims, to have access to insurance funds to satisfy their judgments.

(Citations and punctuation omitted.) *Florida Intl. Indem. Co. v. Guest*, 219 Ga. App. 222, 225 (464 SE2d 847) (1995), citing in part *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335, 341 (1) (329 SE2d 136) (1985). Hix, as a garnishor, stands in the shoes of the defendant, Bolt, and cannot garnish amounts that Bolt himself could not have obtained from Hertz.

> It is well settled by numerous decisions of this court and of the Supreme Court that the position of a plaintiff in relation to the garnishee is no better than the position of the defendant in execution, and if the defendant could not sue and obtain a judgment against the garnishee, then the plaintiff is not entitled to a judgment against the garnishee.

(Citations and punctuation omitted.) *Scarboro v. Ralston Purina Co.*, 160 Ga. App. 576, 577 (287 SE2d 623) (1981).

We must next decide whether the relevant exclusions, as a matter of public policy, apply to Hix and his wife as the innocent victims of a motor vehicle accident. A long line of Georgia cases has addressed this question in the context of several insurance exclusions.

While recognizing that public policy favors the compensation of innocent accident victims, the courts have determined that public

policy will decline to enforce policy exclusions only to the extent of the statutory coverage limits mandated by Georgia's compulsory insurance law, OCGA § 33-7-11 (a) (1) (A). See *Neese*, supra, 254 Ga. at 341-342 (2) (exclusion for "attempting to avoid apprehension or arrest" unenforceable as against public policy only to the extent of insurance required by compulsory insurance law); *Hoque v. Empire Fire &c. Ins. Co.*, 281 Ga. App. 810, 812 (637 SE2d 465) (2006) (intrafamily exclusion enforceable when injured third party had access to other insurance in excess of statutory minimums); *State Farm Mut. Auto. Ins. Co. v. Drawdy*, 217 Ga. App. 236, 237 (2) (456 SE2d 745) (1995) (lack of notice exclusion enforceable when uninsured motorist coverage available); *Auto-Owners Ins. Co. v. Jackson*, 211 Ga. App. 613, 614 (1) (440 SE2d 242) (1994) (intentional damage exclusion not void in light of available uninsured motorist coverage); *Travelers Ins. Co. v. Progressive Preferred Ins. Co.*, 193 Ga. App. 864 (389 SE2d 370) (1989) (unlicensed driver exclusion upheld because injured third party had access to other insurance).

> Under the *Neese* analysis, the relevant question is whether the public policy of ensuring some recovery for the third party is satisfied by the third party's access to a recovery through uninsured motorist coverage. We answer that question here in the positive. And because the policy of ensuring some recovery is satisfied, the public's interests in low premiums and safe highways prevail in the *Neese* balancing process, resulting in a decision to enforce the exclusion.

*Drawdy*, supra, 217 Ga. App. at 239 (2). Here, enforcing the applicable exclusions does not conflict with Georgia's public policy in favor of compulsory insurance coverage because Hix indisputably received compensation in excess of the amount required by OCGA § 33-7-11 (a) (1) (A). While Hix "may contend that the compulsory minimum insurance amount, as set by the Georgia legislature, is inadequate compensation," the exclusions "[do] not violate public policy because [they do] not prevent recovery of the compulsory minimum insurance amount." *Hoque*, supra, 281 Ga. App. at 812.

Hix acknowledges, as he must, that Bolt's conduct falls within one or more of the applicable exclusions in the rental agreement. He contends, however, that none of them should apply because no exclusions are listed in the self-insurance plan filed by Hertz with the state insurance commissioner. But neither the statute governing the filing of self-insurance plans, OCGA § 33-34-5.1 (a) (1), nor the application form required by the commissioner requires the applicant seeking a certificate of self-insurance to provide a list of all or

any exclusions, and Hix cites no case requiring such a filing. Moreover, in *Gen. Car & Truck Leasing System v. Woodruff*, 214 Ga. App. 200, 203 (3) (447 SE2d 97) (1994), we noted that "an exclusion for intentionally caused damage was not void as against public policy since the injured third party had access to other insurance funds. [Cit.]" Id. In that case, we concluded that an exclusion in a rental agreement for any violation of the traffic laws was overbroad and unenforceable as a matter of public policy, while a lack of notice provision in the same agreement was unenforceable as a matter of public policy against an innocent third party. Id. at 203-204. As Hertz points out, even though the court in *Woodruff* ultimately found the exclusions unenforceable, if exclusions in a rental agreement were inapplicable to a policy of self-insurance, there would have been no need for an extensive analysis of their wording.

Hix argues that *Jordan v. Spirit Rent-A-Car*, 252 Ga. App. 117, 119 (1) (555 SE2d 734) (2001), supports his position. But *Jordan* involved liability coverage limits, not an exclusion. OCGA § 33-34-5.1 (a) (1) and the insurance commissioner's application form both expressly require a statement of coverage limits in the filing with the insurance commissioner, and in *Jordan* we applied the coverage limit as stated in the self-insurer's filings with the Insurance Commissioner. Id. at 119-120 (2).[3] Similarly, *Nat. Svcs. Indus. v. Transamerica Ins. Co.*, 206 Ga. App. 337 (425 SE2d 327) (1992), also relied upon by Hix, dealt not with an exclusion but with the question of liability coverage limits in a self-insurance plan. Id. at 340 (2).

The United States District Court for the Middle District of Georgia considered this question at some length in *Ryan v. Boyd*, 911 FSupp. 524 (M.D. Ga. 1996), and reached the same conclusion with respect to a DUI use exclusion:

> Whether liability coverage is provided by an insurance policy or by a self-insured company, the public policy of Georgia is to insure that adequate resources be available for the benefit of injured innocent persons. . . . The court finds no basis for concluding that Georgia's public policy places a greater obligation upon a self-insurer to protect a third party against unlawful operation of a motor vehicle than it places upon a company providing coverage under an insurance policy.

Id. at 528-529 (III) (C). Decisions of federal courts are not binding authority on this court, but their reasoning may be persuasive,

---

[3] In addition, the required claims practices filing with the insurance commissioner states that Hertz will "pursue all contract violations and indemnification actions."

*Macon-Bibb County Hosp. Auth. v. Nat. Treasury Employees Union*, 265 Ga. 557, 558 (458 SE2d 95) (1995), and, like the trial court, we find the reasoning of the district court and its analysis of Georgia law persuasive.

We conclude that the exclusions in Bolt's rental agreement apply to Hix's claim in garnishment and that the public policy considerations enforcing the statutory minimum coverage are not implicated because Hix received compensation in excess of that required by statute. We therefore affirm the judgment of the trial court.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED NOVEMBER 23, 2010 —
RECONSIDERATION DENIED DECEMBER 14, 2010.

*Hudson, Montgomery & Kalivoda, David R. Montgomery, Kenneth Kalivoda*, for appellant.

*Weinberg, Wheeler, Hudgins, Gunn & Dial, Patrick B. Moore, Howard J. Russell, Stephen J. Rapp*, for appellee.