A01A0590. WOODY v. GEORGIA FARM BUREAU MUTUAL
INSURANCE COMPANY.
(551 SE2d 836)

ANDREWS, Presiding Judge.

At issue in this case is an automobile insurance policy issued by Georgia Farm Bureau Mutual Insurance Company which contains a provision excluding liability coverage where the insured vehicle was knowingly used without a valid driver's license. Although the exclusion is unambiguous and enforceable in circumstances where it does not violate public policy, we conclude the exclusion is unenforceable in this case because it would violate the public policy established by Georgia's compulsory insurance law that innocent injured persons have access to insurance funds to satisfy their judgments. Accordingly, we reverse the trial court's order enforcing the exclusion and granting summary judgment in favor of Georgia Farm.

It is undisputed that the driver of the insured vehicle, Scott Beck, was knowingly using the vehicle without a valid driver's license when he struck the rear of a vehicle driven by Richard

Woody.[1] Richard Tuggle, who was a passenger in the vehicle driven by Beck, sued Beck and Woody for injuries he sustained in the accident claiming that their joint negligence caused the accident. Woody answered, denied he was negligent, and cross-claimed against Beck alleging that Beck's negligence caused the injuries suffered by Woody in the accident. Although Woody's vehicle had liability insurance coverage, Woody chose under OCGA § 33-7-11 (a) (3) not to purchase uninsured motorist coverage.

Georgia Farm entered a defense of Beck under a reservation of rights and filed a declaratory judgment action against Beck, Woody, and Tuggle seeking a ruling that the unlicensed driver exclusion was enforceable and excluded liability coverage under the policy. In granting Georgia Farm's motion for summary judgment, the trial court held that the exclusion was enforceable and that it did not contravene the public policy established by the compulsory insurance law. The trial court found that, even though enforcing the exclusion would leave Woody without any liability insurance funds to satisfy a judgment for his injuries, this did not contravene public policy because Woody could have purchased uninsured motorist coverage but chose not to do so.[2]

We agree that the unlicensed driver exclusion is unambiguous and enforceable in circumstances where it does not violate public policy. *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 717 (470 SE2d 659) (1996); *Southeastern Security Ins. Co. v. Empire Banking Co.*, 230 Ga. App. 755 (498 SE2d 282) (1998). However, the Supreme Court's holding in *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335 (329 SE2d 136) (1985), compels the conclusion that to enforce the exclusion in this case against Woody would leave Woody without access to insurance funds, and that this would contravene the public policy served by the compulsory insurance law to provide access to insurance funds for innocent injured persons. Id. at 341.

*Neese* dealt with enforcement of a different liability coverage exclusion which applied when the insured driver was attempting to avoid apprehension or arrest, but the public policy issues are the same. While attempting to elude police in a high-speed chase, Neese ran head-on into a vehicle driven by Blalack, who was killed in the collision. Blalack had no automobile insurance. The insurer, Cotton States, denied coverage based on the exclusion. The Supreme Court examined the public policy interests that the compulsory insurance

---

[1] Beck was driving the vehicle with the express permission of the owner, Ronnie Miller.

[2] Enforcement of the coverage exclusion against Tuggle was not at issue. The record shows that substituted service pursuant to former OCGA § 9-11-4 (d) (7) (now (e) (7)) was made on Tuggle in the declaratory judgment action, but the record does not show any answer or other response by Tuggle to the action.

law was enacted to serve and concluded that the exclusion was directly contrary to the interest that accident victims like Blalack have access to insurance funds to satisfy their judgments. Id. at 341. Recognizing that the compulsory insurance law established a public policy that "innocent persons who are injured should have an adequate recourse for the recovery of their damages," the Court concluded that the exclusion was unenforceable as to Blalack on grounds of public policy. (Punctuation omitted.) Id. The Court also recognized that Blalack had no automobile insurance and thus no uninsured motorist coverage, but stated, "Even if he had had liability insurance, under our law he could have chosen not to purchase uninsured motorist protection." Id.[3]

The trial court's conclusion that no public policy is violated by enforcing the exclusion because Woody chose to reject uninsured motorist coverage cannot be squared with the Supreme Court's holding in *Neese*. Accordingly, the grant of summary judgment in favor of Georgia Farm must be reversed.

*Judgment reversed. Johnson, P. J., Smith, P. J., Ruffin and Ellington, JJ., concur. Miller, J., concurs and concurs specially. Eldridge, J., dissents.*

MILLER, Judge, concurring specially.

I concur with the majority opinion, but I write separately to address concerns raised by the dissent.

The dissent reasons that requiring the offending vehicle's insurance company to pay for injuries to an uninsured victim is "disparate treatment," for other victims who choose and pay for uninsured motorist coverage will not be able to recover from the offending vehicle's insurance company. As pointed out by the majority, *Cotton States Mut. Ins. Co. v. Neese*[4] held that in enacting a law requiring car owners to carry compulsory liability insurance, the legislature sought to "ensure compensation for innocent victims of negligent motorists." Thus, the legislature long ago made the policy decision to allow uninsured victims to recover in such circumstances, regardless of why they were uninsured. In fact, in *Neese* the victim who was allowed to recover had chosen not only to have no uninsured motorist coverage, but had chosen to have no insurance at all. Thus, the policy decision of allowing such a victim to recover was made by legislative

---

[3] It may be assumed for purposes of this decision that Woody was an innocent victim of the collision. Georgia Farm does not contend that Woody was negligent, nor has it attempted to establish such negligence or that such negligence was the proximate cause of the collision. *Neese*, 254 Ga. at 341, n. 12.

[4] 254 Ga. 335, 337 (1) (329 SE2d 136) (1985).

enactment as interpreted by the Supreme Court of Georgia 16 years ago.

The dissent then concludes that "such disparate treatment would create uncertainty for the insurer and increase premiums to cover such unknown risk to the insurer." The dissent implies that such will unfairly lead to lower insurance premiums for the victim who rejects uninsured motorist coverage and to higher premiums for consumers at large. I disagree. Nothing in the legislative enactments since *Neese* has changed the underlying policies set forth in *Neese*. Contrary to the dissent's statements in its first footnote (n. 7), the overriding consideration in *Neese* was the observation that "our compulsory insurance law was enacted to serve that very interest" of compensating innocent accident victims.[5] That is still the overriding consideration of the current compulsory insurance law.[6] I share the dissent's concern regarding insurers' uncertainty leading to an increase in premiums for consumers; however, there is no evidence to suggest that this will happen in light of the fact that this has been the status of insurance law in Georgia for the past 16 years. This Court is duty bound to preserve the public policy of allowing compensation for innocent victims of automobile accidents, notwithstanding the victims' failure to purchase automobile insurance, specifically uninsured motorist protection.

ELDRIDGE, Judge, dissenting.

Respectfully, I dissent.

The majority construes the public policy of Georgia as invalidating any and all valid and otherwise enforceable automobile insurance contract exclusions, which have the effect of voiding all coverage when there has been personal injury and property damage, because under the Georgia Motor Vehicle Accident Reparations Act, ("No-Fault Insurance") since repealed, the Supreme Court of Georgia held in *Cotton States Mut. Ins. Co. v. Neese*, 254 Ga. 335, 338 (1) (329 SE2d 136) (1985), that, under such law providing for compulsory insurance liability and personal injury protection, such compulsory insurance law mandated as public policy that innocent injured persons have access to insurance funds to satisfy their judgments.

1. In *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 717 (5) (470 SE2d 659) (1996), the Supreme Court of Georgia held that, in cases of clear and unambiguous exclusions contained in a policy, the insurer can exclude from coverage unlicensed drivers who have permission to drive the vehicle. "There is no question that an insurer has a right to restrict the operation of vehicles insured by it to persons legally qual-

---

[5] Id. at 341 (1).
[6] Cf. OCGA § 33-34-4.

ified to operate an automobile. All semblance of ambiguity is removed by an exclusion relieving the insurer from liability should the vehicle be driven in violation of any law as to drivers' licenses." (Citations omitted.) Id. at 717 (5). See also *Southeastern Security Ins. Co. v. Empire Banking Co.*, 230 Ga. App. 755, 756 (1) (498 SE2d 282) (1998). As in *Hurst v. Grange Mut. Cas. Co.*, supra, in this case, Beck had Miller's permission to drive Miller's car.

Where, however, as in this case, the special endorsement clearly creates a separate and additional special exclusion for unlicensed drivers, such exclusion creates an unambiguous exclusion that is not construed in conjunction with any issues of permission of the insured. *Hurst v. Grange Mut. Cas. Co.*, supra. Where, as here, the exclusion for lack of a driver's license does not depend upon any reasonable belief as to permission, the exclusion for lack of a valid driver's license is valid. *Southeastern Security Ins. Co. v. Empire Banking Co.*, supra at 756.

2. In 1974, the General Assembly enacted the Motor Vehicle Accident Reparations ("No-Fault") Act, which provided insurance coverage in virtually all circumstances to an injured victim. Ga. L. 1974, p. 113 (OCGA § 33-34-1 et seq.). At the same time, the General Assembly enacted a compulsory liability insurance law. Ga. L. 1974, p. 113 (OCGA §§ 33-34-4; 33-34-37 (a); 40-9-37 (a)); *Pearce v. Southern Guaranty Ins. Co.*, 246 Ga. 33, 36-37 (268 SE2d 623) (1980).

In determining the public policy of this state regarding an exclusion from coverage, the Supreme Court held that "the advent of compulsory motor vehicle liability insurance in this state established the public policy that 'innocent persons who are injured should have an adequate recourse for the recovery of their damages.' [Cit.]" *Cotton States Mut. Ins. Co. v. Neese*, supra at 338 (1); see also *Anderson v. Southeastern Fidelity Ins. Co.*, 251 Ga. 556 (307 SE2d 499) (1983).[7]

---

[7] The General Assembly repealed the No-Fault Act in 1987. Ga. L. 1987, p. 542, § 2. In 1991, the General Assembly enacted a new compulsory insurance statute without no-fault coverage. Ga. L. 1991, p. 1608, § 1.12; OCGA § 33-34-1 et seq. All of the early cases that recite the public policy basis for rejecting exclusions, where compulsory insurance was mandated, were decided under the No-Fault Act now repealed. *Cotton States Mut. Ins. Co. v. Starnes*, 260 Ga. 235, 237 (392 SE2d 3) (1990); *Southern Guaranty Ins. Co. v. Preferred Risk Mut. Ins. Co.*, 257 Ga. 355, 356 (359 SE2d 665) (1987); *Integon Indem. Corp. v. Canal Ins. Co.*, 256 Ga. 692, 694 (353 SE2d 186) (1987); *GEICO v. Dickey*, 255 Ga. 661, 662 (340 SE2d 595) (1986); *Cotton States Mut. Ins. Co. v. Neese*, supra; *Anderson v. Southeastern Fidelity Ins. Co.*, supra. These cases turned on the exposure of the insured to liability and not on compensation to the victim as the overriding consideration; if compensation to the victim was the overriding consideration, then no exclusion would be possible. "However, since Georgia law does not require liability insurance in every case, we [conclude] that exclusions are not per se prohibited but must be individually evaluated to determine whether they are against public policy." *Southern Guaranty Ins. Co. v. Preferred Risk Mut. Ins. Co.*, supra at 356.

Query: Does the same public policy that previously existed under different insurance

In dicta, the Supreme Court stated, "[t]he 'unlicensed driver exclusion' has been found to be within public policy when applied in a situation wherein the victims of the unlicensed driver had access to insurance funds. *Travelers Ins. Co. v. Progressive Preferred Ins. Co.*, 193 Ga. App. 864, 865 (389 SE2d 370) (1989)"; thus, it indicated approval of the holding of such cited case. (Citation omitted.) *Hurst v. Grange Mut. Cas. Co.*, supra at 717 (5).

To determine the public's competing identifiable interests in the matter, the court should look to three considerations: "(1) as insureds, to limit the insurer's risks and thereby keep automobile insurance premiums as low as possible; (2) as members of the public in general to improve safety on the highways; and (3) as accident victims, to have access to insurance funds to satisfy their judgments." (Citation and punctuation omitted.) *Travelers Ins. Co. v. Progressive Preferred Ins. Co.*, supra at 864; see also *Florida Intl. Indem. Co. v. Guest*, 219 Ga. App. 222, 225 (464 SE2d 847) (1995). "There can be no genuine dispute that the discouragement of insureds against allowing unlicensed drivers to operate insured vehicles both limits the insurer's risks and thereby keeps premiums low, and improves safety on the highways." *Travelers Ins. Co. v. Progressive Preferred Ins. Co.*, supra at 864; see also *Cotton States Mut. Ins. Co. v. Neese*, supra at 341.

Access to uninsured motorist insurance coverage constitutes access to insurance funds within such public policy considerations, satisfying such public policy. See *Travelers Ins. Co. v. Progressive Preferred Ins. Co.*, supra at 865; see also *Southeastern Security Ins. Co. v. Empire Banking Co.*, supra at 756 (2); *State Farm &c. Co. v. Drawdy*, 217 Ga. App. 236, 239 (2) (456 SE2d 745) (1995). Where, as here, the "particular victim" voluntarily and knowingly rejected UM coverage under his policy available to him, which is required to be offered to each motor vehicle policyholder in this state, such "particular victim" had access to insurance funds, because such victim's own conscious rejection of UM coverage is the reason for "lack of accessibility to other insurance funds by a particular victim." Such rejection of UM coverage has the same effect as choosing not to give notice and serve the UM carrier when such access to insurance funds was available and, thus, fails to satisfy the statutory requirements for the UM insurer to be liable to pay any judgment. See *Auto-Owners Ins. Co. v. Jackson*, 211 Ga. App. 613, 614-615 (1) (440 SE2d 242) (1994). Such conscious rejection of coverage should not justify invalidating an unlicensed driver exclusion when the victim and the insured

---

statutes now remain unchanged under the present, radically different statutory scheme? However, under the facts and circumstances of this case, such issue need not be addressed.

rejecting coverage are the same person. OCGA § 33-7-11 (a) (3). See in general *Travelers Ins. Co. v. Progressive Preferred Ins. Co.*, supra at 865. To hold otherwise would be to treat similarly situated insurers unequally, when both have exclusions of unlicensed drivers. This is because the insurer's coverage would not depend upon the clear, express, and unambiguous exclusion of an insurance contract written for an insured, but would depend upon whether or not, factually and legally, a third party properly accepted or rejected, under their own motor vehicle liability policies, UM coverage and would allow lower premiums to the insured who rejects UM coverage rather than to the policy with exclusions from coverage. Further, Miller, as the insured vehicle owner, had no tort liability for the borrowed vehicle driven by Beck, an unlicensed driver with permission;[8] absent allegations and showing of negligent entrustment by Miller creating tort liability of the insured,[9] Miller, the insured, has no liability. See *Southern Guaranty Ins. Co. v. Preferred Risk Mut. Ins. Co.*, supra at 356. Such disparate treatment would create uncertainty for the insurer and increase premiums to cover such unknown risk to the insurer.

DECIDED JULY 6, 2001.

*Paula O. Free*, for appellant.
*Whelchel & Dunlap, Thomas M. Cole*, for appellee.

---

[8] "Ownership of a vehicle alone is not sufficient to establish an owner's liability." (Citations omitted.) *Grant v. Jones*, 168 Ga. App. 690, 691 (310 SE2d 272) (1983). If either a master, servant, or agency relationship exists between the owner and the driver when the vehicle is being used for the benefit of the owner, then based upon the doctrine of respondeat superior or agency, there may be tort liability. *Cotton v. Toole*, 183 Ga. App. 547-548 (1) (359 SE2d 368) (1987); *Shmunes v. Gen. Motors Corp.*, 146 Ga. App. 486, 488 (3) (246 SE2d 486) (1978).

[9] An owner/bailor may be held liable for negligent entrustment of a vehicle premised upon general tort or statutory grounds. . . . Liability for negligent entrustment flows from the negligent act of the owner permitting another to drive [his] vehicle when the owner knows the driver to be either incompetent or habitually reckless. Moreover, to recover under this theory, an owner's negligence must concur, as part of the proximate cause, with the negligent conduct of the driver on account of his incompetency and recklessness.
(Citations and punctuation omitted.) *Alamo Rent-A-Car v. Hamilton*, 216 Ga. App. 659, 660 (455 SE2d 366) (1995).