

**FILED**
Sep 18 2015, 9:26 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Ryan Duffin
Lori A. Coates
Duffin & Hash LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE ROGER
W. HOKE, PERSONAL
REPRESENTATIVE OF THE ESTATE
OF BRIAN HOKE, DECEASED

R.T. Green
Blackburn & Green
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Founders Insurance Company,

*Appellant-Plaintiff,*

v.

Mark May, Pamela Coomer, and Roger W. Hoke as the Personal Representative of the Estate of Brian Hoke, deceased,

*Appellees-Defendants,*

September 18, 2015

Court of Appeals Case No.
49A02-1501-PL-8

Appeal from the Marion Superior
Court
The Honorable Thomas J. Carroll,
Judge

Cause No. 49D06-1302-PL-7690

**Robb, Judge.**

# Case Summary and Issue

[1] Pamela Coomer, driving a vehicle owned by Mark May and insured by

Founders Insurance Company ("Founders"), was involved in an accident that

ultimately resulted in the death of Brian Hoke. Coomer did not have a valid driver's license nor May's permission to drive the vehicle. Founders filed a complaint seeking a declaratory judgment that it had no duty to defend or provide coverage for the accident pursuant to the terms of the insurance contract and sought summary judgment. The trial court granted summary judgment to Founders as to May and Coomer, but denied summary judgment as to Roger Hoke as the Personal Representative of the Estate of Brian Hoke, Deceased ("Hoke's Estate"). Founders now appeals, raising the sole issue of whether the trial court erred in denying summary judgment as to Hoke's Estate. We conclude the exclusions in the insurance contract relevant to this situation are clear and unambiguous and do not violate public policy; therefore, the exclusions are enforceable. Founders is entitled to summary judgment as to all parties, and the trial court's order denying summary judgment as to Hoke's Estate is reversed.

## Facts and Procedural History

In 2012, May and Coomer were involved in "a serious relationship." Appendix of Appellee at 1. May owned a pickup truck which Coomer would drive "[m]aybe once a month[,]" *id.* at 5, although her driver's license was suspended, *id.* at 6-7. May knew that Coomer sometimes drove the truck because usually when she did so, she was acting as a designated driver for him. In general, however, May "doesn't really like anybody to drive his truck." *Id.* at 7.

On November 10, 2012, Coomer took May's truck to visit her children. May was not with her, and she did not have his permission to drive the truck that day. When returning home, she struck Hoke, who was riding a bicycle. Hoke did not have an automobile and did not have automobile insurance. He died on November 27, 2012, from injuries he sustained in the collision. May's truck was insured on November 10, 2012, by Founders under a policy that provided, in relevant part:

> Part A – Liability Coverage
> Insuring Agreement
> A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. . . . We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. . . . We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.
> B. "Insured" as used in this Part means:
> . . .
> 2. Any person using "your covered auto".
> * * *
> Exclusions
> A. We do not provide Liability Coverage for any "insured":
> . . .
> 8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

Appellant's Appendix at 12-13. In addition, an Amendatory Endorsement modifying Part F – General Provisions of the policy provided:

> No coverage is afforded under any Part of this policy if, at the time of the accident, "your covered auto" . . . is being operated by a person who is not a licensed driver, or is without a valid driver's license, whose driver's license is revoked or suspended, or whose driver's license has been expired for more than 30 days, or is not legally entitled to drive under Indiana law.

*Id.* at 27.

[4] Hoke's Estate filed a wrongful death suit against May and Coomer in July 2013. Founders filed a complaint for declaratory judgment against May, Coomer, and Hoke's Estate, seeking a declaration that it had no obligation to provide coverage benefits under the policy because Coomer did not have a valid driver's license at the time of the accident nor did she have a reasonable belief that she was entitled to use the truck on that date. In May 2014, Founders filed a motion for summary judgment "as the evidence in this matter establishes that Founders owes no duty to provide a defense or indemnification" to May or Coomer. *Id.* at 32. It does not appear that May or Coomer answered the complaint or filed a response to the motion for summary judgment. Hoke's Estate, however, filed a response in opposition to summary judgment, asserting that Founders should not be permitted to deny insurance coverage as to Hoke's Estate, "an innocent, injured party" who "will be without any source of compensation for losses suffered in the November 10, 2012 incident . . . ." *Id.* at 104.

[5] On November 3, 2014, the trial court entered a summary ruling on Founders' motion for summary judgment as to May and Coomer, finding that there is no genuine issue of fact and Founders is entitled to summary judgment against May and Coomer. However, the trial court's order also stated that "all issues remain or survive as to the remaining Defendant, [Hoke's Estate]." *Id.* at 107. Founders then sought and was granted permission to pursue this interlocutory appeal of the trial court's order with regard to the ruling as to Hoke's Estate.

# Discussion and Decision

## I. Standard of Review

[6] When we review a trial court's ruling on summary judgment, we apply the same standard as the trial court. *Manley v. Sherer,* 992 N.E.2d 670, 673 (Ind. 2013). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The appellant has the burden of persuading us that the summary judgment ruling was erroneous. *Amaya v. Brater,* 981 N.E.2d 1235, 1239 (Ind. Ct. App. 2013), *trans. denied.* Where the facts material to the proceedings are not in dispute, this court determines whether the trial court correctly applied the law to the facts. *Johnson v. Hoosier Enters. III, Inc.,* 815 N.E.2d 542, 548 (Ind. Ct. App. 2004), *trans. denied.* A case such as this one, involving the interpretation of an insurance contract, is particularly appropriate for summary judgment because the interpretation of a contract is a question of law. *Burkett v. Am. Family Ins. Grp.,* 737 N.E.2d 447, 452 (Ind. Ct. App. 2000).

## II. Denial of Summary Judgment as to Hoke's Estate

[7] The particular facts of this case present an issue of first impression in Indiana: Does an insurer which has no duty to provide coverage benefits to its insured pursuant to the plain terms of the insurance contract nonetheless have to pay damages to an injured third party who has no independent source of insurance? Founders contends that it does not have to pay those damages because it reasonably limited its liability by the terms of its insurance contract to exclude

coverage in these circumstances. Hoke's Estate argues that permitting Founders to deny coverage in this instance would contravene the public policy underlying Indiana's Financial Responsibility Act to provide "persons who suffer loss due to the tragedy of automobile accidents . . . a source and means of recovery." Brief of Appellee at 3. Hoke's Estate contends that the result it seeks is "consistent with the result reached by appellate courts in other compulsory insurance law jurisdictions," *id.* at 6, and is supported by the reasoning of Indiana decisions on similar issues.

## A. Overview of Statutes and Caselaw

[8]     Historically, Indiana required proof of financial responsibility for automobile owners only after the occurrence of an accident. Although the primary purpose of the then-Safety-Responsibility and Driver Improvement Act was "to facilitate loss recovery by auto accident victims," the statute was not a compulsory insurance statute because means of proving financial responsibility other than insurance were allowed. *See Allstate Ins. Co. v. Boles*, 481 N.E.2d 1096, 1101 (Ind. 1985). When the statute was amended in 1983 to require proof of financial responsibility when registering a car, Ind. Code § 9-18-2-11, the law still permitted proof of responsibility through bond, deposit of funds or securities, and self-insurance in addition to traditional insurance, Ind. Code ch. 9-25-4. Thus, Indiana remains a "compulsory financial responsibility state." *Transamerica Ins. Co. v. Henry*, 563 N.E.2d 1265, 1267-68 (Ind. 1990). "Indiana's current financial responsibility scheme, like the prior one, demonstrates a policy to protect automobile owners . . . from damages which

might be inflicted on them by other cars out on the road." *Id.* at 1268. To this end, insurers must offer uninsured and underinsured motorist coverage in every insurance contract. *See* Ind. Code § 27-7-5-2. "The purpose of uninsured motorists insurance is to place the *insured* in substantially the same position as if the other party had complied with the minimum requirements of the insurance statutes." *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 222 (Ind. Ct. App. 1997) (emphasis added). "The purpose of our financial responsibility statute is to compel . . . other motorists to make provisions for our protection." *Transamerica Ins. Co.*, 563 N.E.2d at 1268. But the statutes do not "constitute a social policy to guarantee compensation to all victims of motor vehicle accidents." *Id.*

[9] The out-of-jurisdiction cases cited by Hoke's Estate are not particularly instructive to this case. Hoke's Estate cites *Woody v. Georgia Farm Bureau Mut. Ins. Co.*, 551 S.E.2d 836 (Ga. Ct. App. 2001), and *Adams v. Thomas*, 729 So.2d 1041 (La. 1999), both of which addressed policy provisions excluding unlicensed drivers from coverage. In *Woody*, a split Georgia Court of Appeals held that the unlicensed driver exclusion, although unambiguous and generally enforceable, was unenforceable in that particular case because the injured third party did not have uninsured motorist protection of his own. If the exclusion were enforced, the injured party would not have access to insurance funds. Relying on Georgia Supreme Court precedent in *Cotton States Mut. Ins. Co. v. Neese*, 329 S.E.2d 136 (Ga. 1985), the *Woody* court held such a result would be in contravention of the public policy served by Georgia's compulsory insurance

law.  551 S.E.2d at 837.  In *Neese*, the Georgia Supreme Court noted that the state's Motor Vehicle Accident Reparations Act (or "no fault act")—which provided insurance coverage in virtually all circumstances to an injured victim—was enacted simultaneously with the law making motor vehicle liability insurance compulsory.  329 S.E.2d at 138-39.  The *Neese* court held these laws "established the public policy that innocent persons who are injured should have an adequate resource for the recovery of their damages[,]" and required viewing the effect of an exclusion from the viewpoint of the victim.  *Id.* at 141 (quotation omitted).  Because our supreme court has expressly stated our financial responsibility statute is *not* a compulsory insurance statute and does not represent a policy of providing compensation to all victims of motor vehicle accidents, *Woody* and *Neese* are inapposite.

[10]  In *Adams*, the Louisiana Supreme Court noted that the state legislature had specifically stated the public policy behind its compulsory insurance law:  "all liability policies . . . are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable . . . ."  729 So.2d at 1043.  The court further noted that the determination of "what is an acceptable exclusion in an insurance policy is up to the legislature . . . ."  *Id.* at 1044.  Therefore, the court held that a policy that excludes an unlicensed driver from coverage without an express legislative directive is "an impermissible restriction on the intent and purpose of the legislature's statutory scheme enacted to ensure that all Louisiana motorists have available to them automobile liability insurance coverage."  *Id.* at 1044-45.  Thus, *Adams* is distinguishable in several respects:

in Indiana, enforceable exclusions do not have to be legislated; we have no specific statement of legislative intent as to the policy behind our statutes; and as with *Woody*, we do not have a compulsory insurance statute but a compulsory financial responsibility law which our courts have stated does not represent a policy of compensating all accident victims.

[11]     Likewise, the Indiana cases cited by Hoke's Estate are not directly applicable. Hoke's Estate asserts that in *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664 (Ind. 1997), *Federal Kemper Ins. Co. v. Brown*, 674 N.E.2d 1030 (Ind. Ct. App. 1997), *Motorists Mut. Ins. Co. v. Morris*, 654 N.E.2d 861 (Ind. Ct. App. 1995), and *Am. Underwriters Grp. v. Williamson*, 496 N.E.2d 807 (Ind. Ct. App. 1986), our courts "have engaged in an analysis similar to that utilized in *Woody* and *Adams* and reached similar results." Br. of Appellee at 8. With respect to *Williamson*, *Morris*, and *Brown*, we note that the insurance company at issue was attempting to rescind its insurance contract altogether due to misrepresentations made by the insured when applying for the insurance. *See, e.g., Williamson*, 496 N.E.2d at 810-11 (stating, based on a survey of cases from New York, Michigan, and Georgia, that "it appears to have been universally held that an insurer cannot on the ground of fraud or misrepresentation retrospectively avoid coverage under a compulsory or financial responsibility law so as to escape liability to a third party[,]" and overruling *Automobile Underwriters, Inc. v. Stover*, 148 Ind. App. 555, 268 N.E.2d 114 (1971), which had established the right to rescind in Indiana prior to the Financial Responsibility Act), *disapproved by Guzorek*, 690 N.E.2d at 672 ("*Williamson* is disapproved to the extent it holds that the liability

insurer can never rescind due to material misrepresentations."). That is not the situation we have here, where Founders seeks to *enforce* its insurance contract.

[12] As for our supreme court's decision in *Guzorek*, we note that it, too, was decided in the context of whether a contract for insurance could be rescinded due to a misrepresentation. We also note that it cast doubt upon the continued viability of *Williamson*, *Morris*, and *Brown*. 690 N.E.2d at 672. It further declined to pass on the question presented here as one not presented by the facts of that case: "We leave for another day whether a liability insurer can deny coverage when the third party does not have protection against uninsured motorists. This issue is not settled under current precedent but is neither presented under these facts nor argued by the parties." *Id.*

## B. Insurance Law in Indiana

[13] Without any case law directly on point, we turn to the basic principles of contract law. An insurance policy is a contract, and in reviewing the policy, we construe it as we would any other contract—to give effect to the parties' intentions at the time the contract was made. *Puente v. Beneficial Mortg. Co. of Indiana*, 9 N.E.3d 208, 217 (Ind. Ct. App. 2014). The freedom to contract is "a bedrock principle of Indiana law," *id.* at 218, and "the freedom of the parties to exclude risks from an insurance contract is well established," *United Farm Bureau Mut. Ins. Co. v. Hanley*, 172 Ind. App. 329, 338, 360 N.E.2d 247, 252 (1977). "Generally, insurers are free to limit liability in any manner not inconsistent with public policy, and an unambiguous exclusionary clause is

ordinarily entitled to enforcement." *Williams v. Safe Auto Ins. Co.*, 980 N.E.2d 326, 330 (Ind. Ct. App. 2012) (quoting *Am. Family Life Assurance Co. v. Russell*, 700 N.E.2d 1174, 1177 (Ind. Ct. App. 1998), *trans. denied*). "Whenever a court considers invalidating a contract on public policy grounds, it must always weigh in the balance the parties' freedom to contract." *Boles*, 481 N.E.2d at 1101. "Only in cases which are substantially free from doubt will we exercise our power to declare a contract void as contravening public policy." *Lexington Ins. Co. v. Am. Healthcare Providers*, 621 N.E.2d 332, 338 (Ind. Ct. App. 1993), *trans. denied*.

[14]    In general, an attempt to dilute or diminish uninsured or underinsured motorist protection is contrary to public policy. *See Am. Family Mut. Ins. Co. v. Federated Mut. Ins. Co.*, 775 N.E.2d 1198, 1207 (Ind. Ct. App. 2002) ("Any insurance language that dilutes statutory protection is contrary to public policy."). However, the exclusions upon which Founders would deny coverage in this case do not dilute or diminish the uninsured or underinsured coverage contained therein. Indiana Code section 27-7-5-2(a) mandates that insurance companies offer uninsured and underinsured motorist protection "for the protection of persons insured under the policy . . . ."[1] The uninsured and underinsured provisions in May's policy were for *his own protection* if *an insured*

---

[1] The statute requires an insurance company to offer uninsured and underinsured coverage, Ind. Code § 27-7-5-2(a), but the named insured may reject in writing both or either uninsured and underinsured coverage, Ind. Code § 27-7-5-2(b).

*under his policy* were to be in an accident with an uninsured or underinsured motorist. Hoke was not uninsured or underinsured in the sense used by Indiana Code section 27-7-5-2 mandating such coverage in insurance contracts because as a non-motorist, he was not subject to financial responsibility requirements at all. The exclusions at issue do not dilute or diminish May's uninsured or underinsured motorist protection because May was not entitled to recover under those provisions. Likewise, Hoke's Estate is not entitled to recover under those provisions because Hoke was not an insured under May's policy.

[15] Here, the insurance contract excluded liability coverage for someone using the vehicle without a reasonable belief that he or she is entitled to do so. Appellant's App. at 13. The insurance contract further included the condition that no coverage would be afforded under the contract if the vehicle is being operated by a person who is an unlicensed driver for any reason. *Id.* at 30. These are clear and unambiguous provisions of the insurance contract reasonably limiting Founders' risk to liability for the conduct of an insured who should and legally could be driving the vehicle. Because of the difference between a compulsory *insurance* statute and our compulsory *financial responsibility* statute, if May did not want to be subject to the exclusions at issue,[2]

---

[2] These exclusions were plainly stated in the policy of insurance and were not buried in fine print or otherwise hidden. May knew that Coomer occasionally drove his vehicle; he presumably knew she did not have a valid license; and he had also expressed to her he did not want her to drive his vehicle when he was not present. *See* App. of Appellee at 44-46.

he did not have to purchase a policy of insurance. Instead, he could have posted a bond in the same minimum coverage amount he had insured himself for through Founders and he would have been subject to no such restrictions. The dissent does not believe the distinction between compulsory insurance and compulsory financial responsibility statutes is significant. Not only has our supreme court clearly stated that there is a legal distinction, *see Transamerica Ins. Co.*, 563 N.E.2d at 1267-68, but in this case there is also a factual distinction. In a compulsory insurance state, it would be theoretically possible for an insured to comparison shop for a policy of insurance without some or all of these exclusions, but it is more of an improbable possibility than a likelihood that the insured could find one. In a financial responsibility state such as Indiana, it is a very real possibility to demonstrate financial responsibility under one's own terms rather than under the terms imposed by an insurance company.

[16] There is nothing inherent in the exclusions in the Founders insurance contract that make them against public policy, it is only the particular circumstances of this case that make enforcing them seem unjust. However, it is neither logical nor consistent with the law of contracts that the enforceability of a contract of insurance depends upon the status of the person with whom the insured is involved in a collision. To hold otherwise would mean the same conduct under the same contract of insurance could have drastically different results. If Coomer had hit a motorist with uninsured/underinsured motorist protection and the injured party's insurer would have covered the damages per its own contract of insurance, Founders would have been able to rely upon the

exclusions in its contract. *See Guzorek*, 690 N.E.2d at 672 ("There is no injustice in placing the loss with the third party's insurer . . ., who has presumably been compensated through its premiums for accepting the risk of an uninsured tortfeasor."). If Coomer had hit a motorist without insurance or one who had rejected uninsured and/or underinsured motorist protection, *see* Ind. Code § 27-7-5-2(b), then the injured party had accepted the risk of not having that coverage, and Founders should have been able to rely upon the exclusions of its contract. However, because Coomer was involved in a collision with a non-motorist who was not subject to financial responsibility requirements at all, the trial court determined that Founders was not able to enforce the clear and unambiguous exclusions in its contract.[3]

[17] As between an insurer who contracted to provide coverage only under certain circumstances and an insured who has an alternative if he wishes coverage in all circumstances, why should the insurer be liable in contravention of the express terms of the insurance contract? May knew he did not have insurance coverage if the driver of his truck was unlicensed or was operating it without a

---

[3] The trial court's determination raises several practical questions, such as, if Founders has no duty to defend or indemnify May or Coomer, from where does a duty to Hoke's Estate arise? How exactly would the action proceed if Founders has no duty to defend May or Coomer? Does Founders appear in Hoke's Estate's lawsuit against May and Coomer and defend *itself*? Does Hoke's Estate institute a direct action against Founders if it should succeed in its lawsuit against May and Coomer? Could Founders assert the terms of the contract of insurance as a defense in any such action? What would be the limits of Founders' liability to Hoke's Estate if the contract is unenforceable as to May or Coomer? If the exclusionary provisions of the contract are unenforceable, are the limits provisions nonetheless enforceable, and would that be a matter of judicially picking and choosing which provisions of the contract may be enforced and which may not? Because of our resolution of this case, however, we need not answer these questions.

reasonable belief in the right to do so. If Founders cannot rely on the clear and unambiguous terms of its contract for insurance here, could it ever rely on *any* provision of its contract? Determining an insurer's liability only after an accident occurs and the status of the victim is ascertained creates the possibility of disparate treatment of similarly situated insurers. The uncertainty occasioned by the inability of an insurer to rely on reasonable limits to its liability would most likely be passed along to the insured in the form of higher premiums to cover the unknown risk or the constriction of insurance coverage in general.

[18] We have great sympathy for the Hokes and their loss. However, "a third party's right to recover through liability insurance is not absolute." *Guzorek*, 690 N.E.2d at 672. The dissent would base its decision on the public policy "that persons who suffer loss due to the tragedy of automobile accidents shall have a source and means of recovery," *see* slip op. at 19-20 (quoting *Williamson*, 496 N.E.2d at 810), and require Founders to be that source for Hoke's Estate. However, the source and means of recovery is grounded in the insurance contract itself. The general policy of making insurance available to compensate for losses arising from motor vehicle collisions does not trump the long-standing precedent allowing an insurer to reasonably limit its liability, nor should the recompense of one victim take precedence over the importance of providing affordable insurance to all motorists. Founders limited its risk to permissive, licensed drivers of this vehicle and fixed its premiums on that basis. There is no public policy against such limitations, there is simply the unfortunate reality

that *this* injured party has no access to insurance proceeds under these circumstances.

> Without minimizing the importance of the doctrine that contracts should not be enforced if they contravene public policy, many courts have cautioned against recklessness in condemning contracts as being in violation of public policy. Public policy, some courts have said, is a term of vague and uncertain meaning, which it pertains to the lawmaking power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law.

*Schornick v. Butler*, 205 Ind. 304, 185 N.E. 111, 113 (1933) (quoting *Hogston v. Bell*, 185 Ind. 536, 544, 112 N.E. 883, 885 (1916)). We cannot say this is a case in which we should refuse to enforce the insurance contract on public policy grounds. Though recovery may be more difficult, Hoke is not without a remedy as he may still seek damages from May and Coomer.

# Conclusion

[19] Founders is entitled to judgment as a matter of law on its complaint for declaratory judgment in all respects. The trial court's summary judgment order denying summary judgment as to Hoke's Estate is therefore reversed.

[20] Reversed.

Mathias, J., concurs.

May, J., dissents with opinion.

Founders Insurance Company,

*Appellant-Plaintiff,*

v.

Mark May, Pamela Coomer, and Roger W. Hoke as the Personal Representative of the Estate of Brian Hoke, deceased,

*Appellees-Defendants,*

Court of Appeals Case No.
49A02-1501-PL-8

**May, Judge, dissenting.**

Summary judgment as to Hoke was properly denied. I acknowledge the majority's concern that "[d]etermining an insurer's liability only after an accident occurs and the status of the victim is ascertained creates the possibility of disparate treatment of similarly situated insurers." (Slip op. at 14.) But the result the majority reaches in its effort to avoid "disparate treatment of similarly situated insurers" gives rise to a far greater concern – disparate treatment of innocent persons who are accident victims. As the majority result has the effect of depriving pedestrians, bicyclists, and other non-drivers of recovery that would remain available to motorists involved in traffic accidents, I must respectfully dissent.

I agree with the majority that the particular facts of this case present an issue of first impression in Indiana. But the majority's narrow characterization of Indiana's public policy is not required by our Indiana Supreme Court's precedent and would lead to harsh and unfair outcomes, because it would result in protection for *drivers* injured in motor vehicle accidents but would leave no remedy for pedestrians, bicyclists, or other persons who need not or cannot prove financial responsibility.

Specifically, I would decline to hold, as the majority appears to, that the well-established and almost universally-recognized public policy to protect innocent victims from financial loss by reason of the acts of irresponsible operators of motor vehicles applies only in "compulsory insurance" states but not in "compulsory financial responsibility" states like Indiana.[4] That surely is not a

---

[4] I do not find the distinction between "compulsory financial responsibility" and "compulsory insurance" so significant that it should serve to deprive innocent non-driver victims of motor vehicle accidents of a mechanism for recovery that is available to drivers. Courts have often used the terms interchangeably, *e.g.*, *Dunn v. Safeco Ins. Co. of Am.*, 798 P.2d 955, 958 (Kan. Ct. App. 1990): "[r]egardless of the reasoning used, all courts that have considered the question as it pertains to an innocent third party have held that an insurer cannot, on the ground of fraud or misrepresentation, retrospectively avoid coverage *under a compulsory insurance or financial responsibility law* so as to escape liability to an innocent third party." (Emphasis added.)

The majority suggests "if May did not want to be subject to the exclusions at issue, he did not have to purchase a policy of insurance. Instead, he could have posted a bond in the same minimum coverage amount he had insured himself for through Founders and he would have been subject to no such restrictions." (Slip op. at 13) (footnote omitted). It is a long-standing public policy that persons who suffer loss from automobile accidents should have a source and means of recovery. I would not place outside the scope of that policy those Hoosiers affluent enough to satisfy financial responsibility requirements without buying insurance. An innocent victim's ability to recover should not depend on an automobile owner's income level.

result our legislature intended would flow from the compulsory financial responsibility statutes.

[24] I am fully cognizant of the importance of public policy generally favoring the enforcement of contracts, and I acknowledge our Supreme Court's statement on which the majority relies as its articulation of our public policy that "Indiana's current financial responsibility scheme, like the prior one, demonstrates a policy *to protect automobile owners* . . . from damages which [sic] might be inflicted on them by other cars out on the road." *Transamerica Ins. Co. v. Henry*, 563 N.E.2d 1265, 1268 (Ind. 1990) (emphasis added). That was an appropriate statement of policy in *Henry*, where tortfeasor and victim were both drivers, and I do not suggest automobile owners are undeserving of protection.

[25] But I would not attribute to our legislature a public policy that protects only accident victims who happen to be automobile owners or drivers, and leaves to fend for themselves pedestrians, bicyclists, and other non-drivers who need not or cannot prove financial responsibility or who are otherwise not subject to the financial responsibility laws. As the majority correctly notes, our Indiana Supreme Court has not foreclosed a policy that would place non-drivers on an equal footing: "[w]e leave for another day whether a liability insurer can deny coverage when the third party does not have protection against uninsured motorists." *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 672 (Ind. 1997).

[26] I believe a more useful statement of our public policy in this case is that "it is the policy of this state that persons who suffer loss due to the tragedy of

automobile accidents shall have a source and means of recovery." *Am. Underwriters Grp., Inc. v. Williamson*, 496 N.E.2d 807, 810 (Ind. Ct. App. 1986), (*disapproved on other grounds by Guzorek*). This policy typically guides courts in other jurisdictions who face fact situations like ours, and I believe that analysis strikes a better balance between protection of insured motorists and that of accident victims who are not motorists.

[27] In *McCarthy v. Motor Vehicle Acc. Indemnification Corp.*, 224 N.Y.S.2d 909, 921 (App. Div. 1962), *aff'd*, 188 N.E.2d 405 (N.Y. 1963), the Appellate Division surveyed the law in this area:

> Many states have recognized the need to protect innocent victims from financial loss by reason of the acts of irresponsible operators of motor vehicles. Recent legislation has been enacted in several jurisdictions to remedy such situations and to fill the gaps which have existed. Despite differences in the various statutes a common thread runs through all of them -- that the perspective from which the problem must be considered is the interests of the victim and not the actor. Thus in *Hartford Acc. & Indem. Co. v. Wolbarst*, 95 N.H. 40, 43, 57 A.2d 151, 153, where the collision was deliberately or intentionally caused, the court stated as follows: "The purpose of the New Hampshire Financial Responsibility Act was fundamentally to provide compensation for innocent persons who might be injured through faulty operation of motor vehicles." *In re Opinion of the Justices*, 81 N.H. 566, 129 A. 117, 39 A.L.R. 1023. "Financial responsibility statutes have been passed in many states, and are in the process of preparation in still others, to secure the solvency of operators upon the highways of those states, and to guarantee their ability to discharge judgments arising out of accidents in which they might be involved * * *. The beneficiaries of such an act and of such a policy, when issued, are the members of the general public who may be injured in automobile accidents by such person; and the policies are generally construed with great liberality to accomplish their purpose." 7 Appleman, Insurance Law and Practice, § 4295 [62, 63].

[28] It further noted liability insurance is coming to be regarded more as a device for providing funds to meet the needs of injured persons and less as a device for the protection of the insured. *Id*. at 922. Statutory recognition of this trend is manifested in financial responsibility laws, the purpose of which is to indemnify innocent third persons and to protect the general public from financially irresponsible motorists. *Id*. Since the basic purpose of the financial responsibility laws is not to afford financial protection to the insured, but rather to compensate his innocent victim, there is no reason why the victim's rights should depend upon the motivation of the insured's conduct. *Id*. Nor are the victim's rights against the insurer derived through the insured. *Id*.

[29] Today we address the question our Supreme Court explicitly left unresolved in *Guzorek*: whether a liability insurer can deny coverage when the third party does not have protection against uninsured motorists. I agree with the courts of other states that the perspective from which the financial responsibility question must be considered is the interest of the victim and not the actor, and that the purpose of the financial responsibility laws is to indemnify innocent third persons and to protect the *general public* from financially irresponsible motorists.

[30] I cannot join the majority opinion to the extent it would, in order to protect insurance companies from perceived "disparate treatment," deprive non-motorist accident victims of recovery that is available to accident victims who are motorists, and I must therefore respectfully dissent.